SARGENT. *v.* UNION SCHOOL-DISTRICT IN CONCORD & a.

Independent school-districts, exercising powers equal to those of a town
    district, were "districts organized under special acts," within the
    meaning of the proviso of *s.* 1, *c.* 43, Laws of 1885.

IN EQUITY.   The plaintiff complains, and says that he is a res-
ident, tax-payer, and voter of said district; that said district is a
school-district in Concord in said county, and the other defendants
are the board of education of said district; that by virtue of *c.* 43
of the Laws of 1885 said district will cease to have a corporate
existence from and after March 1, 1886, and at the same time the
other defendants will cease to be the board of education of said
district, and the money belonging to said district will become the
money of said city of Concord as a town district, incorporated by
said *c.* 43; that one thousand dollars of such public money, here-
tofore assessed and collected and now belonging to said district,
the defendants intend and threaten to expend, after said March 1,
for the pretended school purposes of said Union District, that will
then be defunct, without authority from said city, which in its cor-
porate capacity, as a town district, will then be the owner of said
one thousand dollars, to the damage of the plaintiff and in viola-
tion of his rights as a tax-payer and voter of said town district.

Wherefore the plaintiff prays an injunction to restrain the de-
fendants, their officers and agents, and all persons having money of
said Union District in their possession or control, from the unlaw-
ful diversion and appropriation thereof, intended and threatened
as aforesaid.

Dated the 15th day of February, 1886.

                                            J. E. Sargent,
                        By his attorney, Mason W. Tappan.

*To any Justice or Justices of said court:*
    The foregoing bill having been filed with the clerk of said court,
the plaintiff prays a temporary injunction.
                        By his attorney, Mason W. Tappan.

    The defendants are notified that a hearing on the foregoing peti-
tion will be had before one or more justices of said court, at the
senate chamber in Concord, on Monday, February 22, 1886, at 11
o'clock A. M.                                 Mason W. Tappan.

    The bill having been filed February 15, 1886, the application for
a temporary injunction was heard and denied on the 22d of the
same month, and, being adjourned into the law term, was decided
March 12, 1886.

*M. W. Tappan,* for the plaintiff.

*Chase & Streeter* and *D. B. Donovan,* for the defendants.

Doe, C. J.   "The division of towns into school-districts hereto-
fore existing is hereby abolished, and each town shall hereafter
constitute a single district for school purposes: *Provided, however,*
that districts organized under special acts of the legislature may
retain their present organization."   Laws of 1885, *c.* 43, *s.* 1.   In
the title of *c.* 89 of the same Laws, districts described in *c.* 43 as
"organized under special acts" are called "special school-districts."
Both acts took effect from and after March 1, 1886.   Special dis-
tricts retain their organization, and continue to exercise their cor-
porate powers and perform their educational duties; but from and
after the first day of March all other districts ceased to exist for
general purposes, and were united in town districts.   In these new
town districts there are to be no superintending or prudential com-
mittees; but the duties heretofore performed by such committees
devolve upon a school board of three persons chosen by ballot at
the annual school-meeting of the town district.

Is the defendant district one of the "districts organized under
special acts of the legislature"?   In the revision of 1867 a new
section was introduced in the chapter on high schools, providing
that all statutes then in force, applying to particular places or dis-
tricts, relating to schools, or to the committees or officers thereof,
should remain in force.   Gen. St., *c.* 82, *s.* 12.   Statutes applying
to particular places are generally called special acts.   A corpora-
tion formed under a charter passed for no other purpose than its
creation is organized under a special act, distinguished from the
general organizing law.   G. L., *cc.* 151, 152.   The distinction be-
tween general and special legislation being indicated by the terms
"organized under special acts," understood in their technical and
ordinary legal sense, this distinction is to be taken as the test of
the abolition of a school-district, unless competent evidence shows
that a different test was intended by the legislature, and that the
descriptive terms are to be understood in some other sense than
that in which they are commonly used in the law.

In *c.* 43 there is evidence that the proviso of *s.* 1, saving special
districts, was inserted after the original bill was drawn, without
such clerical alterations as would make all the sections literally
accurate when their meaning was modified by the proviso.   But
the evident verbal inaccuracy raises no difficulty of interpretation.
Each section means what the whole act, taken together, shows the
legislature understood it meant.   The proviso being a saving clause
that restrains the operation of the rest of the act within a certain
limit, that limit is to be kept in view in reading the 2d, 4th, 5th,
6th, and 8th sections as well as the 1st.   Section 2, providing for
an equalization of school-house and other property by the assess-
ment and remission of a tax, in terms requires the tax to be assess-
ed "upon the whole town," when the meaning is that it shall be
assessed upon the whole town district composed of abolished dis-
tricts, and not upon a special district that retains its organization.

35*

Section 5 requires the selectmen to call " the first meeting of such district so composed of the whole town," meaning the town district composed of abolished districts only.    Section 6 requires " the said school board of each town" (meaning town district) to provide schools at such places and times " as shall give all the scholars of the town [meaning town district] as nearly equal advantages as may be practicable."    It is the duty of the court to ascertain, from legal proof, the intention of the legislature, whose purpose, plainly manifested by the entire act, cannot be thwarted by a literal construction of particular passages.    If it is found, upon competent evidence, that the proviso, or any other clause, taken in its strict, literal sense, would not express, but would defeat, the legislative will, it is to be construed with such liberality as will execute the proved design of the law-making power.    As other clauses may be misunderstood if the proviso is disregarded, so the proviso, read without due consideration of subsequent sections, and the existing conditions of law and fact upon which it is to operate, may lead to error.

A clause of the second section provides for an apportionment of the property and debts of union districts belonging to different towns.    *Rumney* v. *Smart*, 18 N. H. 268, is a case that arose upon a special act uniting District No. 5 in Rumney and No. 7 in Wentworth.    In *School-District* v. *Pillsbury*, 58 N. H. 423, parts of Bow and Concord had been united in one district under a general law. No reason appears in the acts of 1885 for employing the technical distinction between general and special legislation as the test in extinguishing all such districts as that in Bow and Concord, and allowing all such as that in Rumney and Wentworth to survive; and that test would produce results that were apparently not intended by the legislature.    As the school board of the town district is to be elected, not by the town as a town, nor by the surviving districts, but by the new town district taking the place of those that are abolished, and as the powers and duties of this board will not extend to the supervision of the schools and teachers of surviving districts, the town as a town, and not as a school-district, would need to provide a superintending committee for a surviving district not having a superintending committee or board of education of its own.    Many special acts have been passed for the organization of subordinate districts with no such committees or boards of their own.    The proviso, taken in the literal and technical sense that would save the districts organized under such acts, would continue the operation of complex machinery which it was one of the chief objects of the legislature to stop, and would exclude much of the unity and simplicity of organization and action which they particularly desired to introduce.    A result so inconsistent with the general tenor and purpose of the law is evidence on the question of interpretation.    The obvious general purpose of unity and simplicity indicates an intended abolition of all districts not authorized

by the law under which they were organized to have special officers of their own, invested with full powers of supervising schools and teachers.

By the act of July 7, 1826, the principle of the ancient town district system, that had been only partially changed, was completely reëstablished in Portsmouth. In 1840 Newington was exempted from the operation of the general law requiring towns to be divided into school-districts. *Pickering* v. *Coleman*, 53 N. H. 424, 426, 427, 428. Chapter 631, Laws of 1848, authorized the appointment of a superintending committee for district No. 3 in Somersworth, and a gradation of its schools. The Portsmouth act was not to take effect until adopted by the voters of Portsmouth; and the Somersworth act was not to take effect until adopted by the voters of the third district of Somersworth. By the Rev. Sts., *c.* 74, *s.* 15, any town could adopt the Portsmouth act; and by Laws of 1848, *c.* 718, any district could adopt the Somersworth act. If the Portsmouth act had been adopted by every town, or the Somersworth act by every district, in pursuance of authority granted by general law, it could have been said that in some peculiar sense and for some peculiar purpose the whole state was organized under a special act. But if language were used in its ordinary signification, it would be said that a single statute, so extended by the legislature, and the towns or districts exercising a delegated legislative power, as to govern the entire population of the state, was a general law. A general local option law is not usually called a special act; and if originally it were expressly limited to one town or district, it would in some sense and for some purpose be denominated a general law, when it could, by universal local adoption, become a universal rule of conduct. A narrow and technical meaning of "special acts" could put Portsmouth and the third district of Somersworth in the class of special districts, and exclude from that class other districts organized in the same manner, by the same proceedings, and under the same acts. But it is not probable that the legislature intended to abolish some districts and save others upon a distinction so unsubstantial, and so irrelevant for any purpose of such legislation. The presumption is that the proviso rests on some ground of reason, and that the test of discrimination is not wholly nominal, but is essentially connected with the merits of the question of abolition.

Chapter 2231, Laws of 1859, recognized "Union School District in the city of Concord" as "a school-district duly organized under the statute of this state known as the Somersworth act." It authorized the district to combine the powers and duties of its prudential and superintending committees, the committee of combined powers and duties being called a board of education. On the adoption of this act by the district, and its election of the board, it was organized under two acts,—one general in an ordinary sense, and the other special. In some essential respects it was

under one, in some essentials it was under the other; and this was not the only district existing and acting by virtue of the joint operation of a general and a special law. As the new law does not expressly provide that a district, organized in part under a general act, is abolished, or that a district, organized in part under a special act, is saved, the mere technical distinction between general and special legislation would be so dubious and puzzling a test as to justify an inference that it was not prescribed. The legislature did not lay down an unintelligible rule, or one containing an ambiguity designed to produce a needless difficulty of application, and involve the operation of the act in serious embarrassment.

Chapter 100, Laws of 1875, *c*. 140, Laws of 1876, and *c*. 147, Laws of 1877, are special laws, authorizing the first district of Laconia, the fifth district of Meredith, and the thirteenth district of Gilford to work under the Concord act. Apparently weary of extending that act by special laws, the legislature passed *c*. 39, Laws of 1877, extending the Concord act to any other district, having certain qualifications, that should choose to work under it. G. L., *c*. 87, *ss*. 17–22. The inclusion of this Concord district with those saved by the law of 1885 because it chose to be partly organized under the Concord act at a time when no other district could follow its example, and the exclusion of others from the Concord class because they chose to be wholly organized under the same act at a time when others could adopt it, present the same incongruity that arises from a similar classification under the Portsmouth and Somersworth acts.

Suppose a town of two ordinary, subordinate districts, equal in territory and taxable property; the north half of the town to be No. 1, and the south half to be No. 2; the school property of No. 1 worth $1,000, and of No. 2, $2,000; and the school money to be raised by the town, $1,000. There would be assessed a school property and school tax of $4,000, one half of it on each half of the town. The $2,000 assessed on the south half would be remitted. Of the $2,000 assessed on the north half, $1,000 would be remitted and $1,000 collected. If the legislature had intended to apply this method to the large specially independent districts organized under general laws within a single town, there is some reason to think more than one year would have been expressly allowed for equalization, as in the case of an abolished union district belonging to different towns.

The general purpose, indicated by the title of the new law (*c*. 43), is to reëstablish "the town system of schools," with that union of town district territory, town district property, and town district organization which did not begin to be dissolved until 1805, and to extend the unity of town district action in the employment and payment of teachers that has always existed in some part of the state, now exists in a considerable part of it, and was not abolished in any part till the state had been settled more than

two hundred years.   *School-District* v. *Sherburne*, 48 N. H. 52, 55;
Mass. Ancient Charters 186; 1 N. H. Prov. Papers 312, 398, 399,
403; 3 N. H. Prov. Papers 11, 12, 13, 189, 190, 364, 365, 570,
799; Sanborn Hist. N. H. 347; Brewster's Portsmouth Rambles
78; Act of 1714 (Laws, ed. 1771, *pp.* 55, 56); Act of Apr. 9, 1777;
*State* v. *Rollins*, 8 N. H. 550, 562; Acts of June 18, 1789; Feb.
8, 1791, *s.* 10; Dec. 13, 1804; Dec. 28, 1805; Dec. 22, 1808; July
6, 1827; July 4, 1829.   The new law, being a mere revival of the
principle of the system that prevailed so long throughout the state,
may be read in the light of history.

Seeking, in the school law of former times, a criterion on which
the legislature probably acted in abolishing some districts and
leaving others, we find, not the distinction between general and
special legislation, but uniform independence and completeness of
organization.   The undivided management, which was a material
element of the school system of so many generations, is restored,
within the limit of the proviso, by reuniting the subordinate dis-
tricts of a town in one independent town district, and permitting
others, specially independent, to remain as they are.   All come
into a consistent plan upon the test of autonomy practically equiv-
alent to that of a town district.

By *s.* 2 of *c.* 89, Laws of 1885, power is given to continue the
school, and preserve the advantages of an abolished union district
belonging to different towns, without unreasonable discriminations
that would infringe equal rights.   It being the duty of school
boards to exercise all their powers in a manner that will "best sub-
serve the interests of education," they are not required to disturb
existing arrangements without cause, or to disregard contracts for
the purpose of raising questions of authority.   Upon them is im-
posed a service of high responsibility in the most important depart-
ment of the government.   The foundation of society is largely
committed to their charge, not for mere alteration, but for improve-
ment, which the legislature thought could be effected through in-
creased efficiency of administration, decreased inequality of educa-
tional rights, and the extinction of prolific sources of strife and
litigation.   In the improvements intended to be made by the
return to the ancient practice, there is nothing tending to show a
legislative purpose to except from the saving operation of the pro-
viso such specially organized districts as were equipped with cor-
porate powers equal to those of a town district.

The distinction the legislature had in view related to the sub-
stantial character of the district organization, and not to an imma-
terial name of its charter.   The whole or a part of a town, being
a school-district under acts, either general or special, that gave it
a special, independent, and complete organization, and officers of its
own having exclusive authority for the superintendence and gov-
ernment of its schools, and the administration of all its school
affairs, is one of the "districts organized under special acts" with-

in the meaning of the proviso, and is not abolished. Districts organized under laws, general or special, by · which their schools were subjected to the supervision of other officers than their own, have ceased to exist. There may be exceptions, founded on laws or circumstances, that do not come into consideration in this case ; but the general rule is based on the distinction between districts that were special in the sense of being by law specially independent, and fully officered for the supervision and management of their schools, and others that were subordinate in the sense of being subject to school supervision by officers not peculiarly their own. It follows that the mere establishment of a high school,.or of graded schools, or a mere union of districts, under general or special law, did not exempt a district from abolition, and that districts organized under the Portsmouth, Newington, Somersworth, or Concord acts, in their special or general forms, or under Gen. Laws, *c.* 86, *ss.* 2, 3, or *c.* 87, *ss.* 16–22, retain their organization, unless they choose to abandon it and unite with the town district.

*Injunction refused.*

CARPENTER, J., did not sit: the others concurred.