Merrimack,
No. 5479.

KENNETH W. JONES

*v.*

MERRIMACK VALLEY SCHOOL DISTRICT & a.

Argued March 2, 1966.
Decided March 30, 1966.

*Kenneth W. Jones* ( by brief ) pro se.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for the defendant.

KENISON, C.J. A petition for a declaratory judgment ( RSA 491:22 ) is a proper method of determining the legality of a proposed expenditure of public funds ( *Leavitt* v. *North Hampton,*

98 N. H. 193 ) and this applies to towns, school districts, village districts and other forms of municipal government. *Lisbon* v. *Lisbon Village District,* 104 N. H. 255; *Dresden School District* v. *Hanover School District,* 105 N. H. 286. The fact that the plaintiff's claims could be enforced by some other proceeding, "does not necessarily preclude their determination by a petition for declaratory judgment." *Hermer* v. *Dover,* 105 N. H. 108, 110.

I. The first question is whether the Penacook School District may lawfully become a part of the defendant district under the provisions of RSA ch. 195 as amended. We conclude that it may. The plaintiff contends that Penacook School District, also known as Penacook Union School District, is ineligible to join the new cooperative school district because it is not a town school district. The short answer is that it is not required to be a town school district to join the cooperative school district. This is evident from the definition in RSA 195:1 I which in pertinent part reads as follows: "'Cooperative school district' means a district composed of two or more school districts of the state associated together under the provisions of this act . . . . ' The fact that the definition of a school district under RSA ch. 195-A; Laws 1963, 277:1, relating to Authorized Regional Enrollment Area Schools, includes a town school district, as well as other types of districts, is no reason to insert the same definition by implication in RSA ch. 195.

The Penacook School District is an independent, self-governing district with a school board although including the same territory, with minor variations, as Ward 1 of the city of Concord. Laws 1907, *c.* 290; Laws 1909, *c.* 239; Laws 1935, *c.* 313. Its status is not in doubt. *Clough* v. *Osgood,* 87 N. H. 444; *Petition of Harris,* 88 N. H. 198. The reference to "towns" in RSA 195: 15-a, which relates to "state building aid," was not intended to prevent a portion of a city which constitutes an independent school district such as the Penacook School District from joining in a cooperative school district. RSA 21:5; *Attorney General* v. *Lowell,* 67 N. H. 198. See RSA 195:1 V. We know of no legal or procedural bar to prevent the Penacook School District from becoming a part of the defendant district and functioning thereunder. *Monadnock School District* v. *Fitzwilliam,* 105 N. H. 487, 495. See *Sargent* v. *District,* 63 N. H. 528.

II. The substance of the second question is whether the Loudon School District may lawfully join the defendant district even though it is not territorially contiguous. Loudon is separated from Penacook by the intervening territory of Ward 2 in Concord. The plaintiff contends that the noncontiguous territory of Loudon cannot be joined to the cooperative school district as a general principle of municipal law ( 2 McQuillin, Municipal Corporations, *s.* 7.20 ) and that it violates RSA 195:2 I which requires that a cooperative school district must be a "natural social and economic region."

Assuming for the purposes of argument that contiguity of territory is the general rule for the incorporation and annexation of municipal governments and that noncontiguity is the exception ( Rhyne, Municipal Law, *pp.* 15, 33-36 ( 1957 )), the statute in the present case requires only that the new cooperative school district shall be "a natural social and economic region." RSA 195:2 I. That this statute does not require absolute and complete territorial contiguity is further indicated by the provision that the region shall have "an adequate minimum taxable valuation and a number of pupils sufficient to permit the efficient use of school facilities within the district and to provide improved instruction." RSA 195:2 I. These additional guidelines indicate that factors other than contiguity are important in connection with the formation of cooperative school districts. See *In re De-Jonge's Petition,* ( Neb. ) 139 N. W. 2d 296 ( 1966 ). History, geography, past educational practices and educational efficiency are and continue to play an important part in determining what constitutes "a natural social and economic region" for cooperative school districts. In *Monadnock School District* v. *Fitzwilliam,* 105 N. H. 487, the cooperative school district was composed of territory not wholly contiguous.

The statutory emphasis is placed on scholars, teachers and school buildings rather than trees, acres and territorial contiguity. "Proximity" may be a substitute for contiguity in certain cases. RSA 195:16 I. This conclusion is further buttressed by RSA 195:2 II, inserted by Laws 1963, 258:4, which provides that the over-all state plan for cooperative school districts "shall be reasonably compatible with the areas of the several supervisory unions." In this connection it is interesting to note that there are six supervisory unions in the state which have

noncontiguous territory in certain cases because of some inter-vening urban territory and in other cases because of the interven-ing territory of unincorporated land. As a practical matter the new cooperative high school in Penacook will be closer to Loudon than the present Concord high school which the Loudon students now attend. All of these factors add up to the proposition that the defendant cooperative school district was properly found to constitute "a natural social and economic region" within the meaning of RSA 195:2 I.

We have no doubt that the Loudon school district was properly included in the formation of the defendant district for the reasons already indicated. If doubt exists elsewhere it is put to final rest by RSA 195:18 VI which provides that a certificate of formation of the district issued by the State Board of Education "shall be conclusive evidence of the lawful organization and formation of the cooperative school district as of the date of its issuance." Such a certificate was issued in this case by the State Board. This statutory provision is valid. *McGary* v. *Barrows,* 156 Me. 250. See *Blackstone* v. *Rollins,* 157 Me. 85; Peterson, School Districts: New England Style, 15 Me. L. Rev. 145, 155 ( 1964 ); Report of the Interim Commission on Education, *p.* 93 ( 1963 ) issued pursuant to Laws 1961, *c.* 291. The history of the gradual reduction of the thousands of school districts that existed in this state at one time, mentioned in *Lisbon School District* v. *District,* 96 N. H. 290, 292-293, has been a continuing process. Peterson, School Districts: New England Style, 15 Me. L. Rev. 145, 159. The provisions of RSA 195:18 VI were intended to eliminate technical and procedural objections in connection with the for-mation of cooperative school districts such as the defendant.

III. The third question is whether there are any infirmities in the acts and proceedings of the State Board of Education which affect the validity of the organization of the defendant. The State Board of Education has power to make its own rules of pro-cedure ( RSA 186:5 ) and this power is not subject to a narrow and limited construction. *Coleman* v. *School District,* 87 N. H. 465, 470. The Board had approved the proposed cooperative school district including Canterbury. Subsequently, Canterbury voted not to join and Webster was substituted. Otherwise the revised articles of agreement were the same as those previously approved by the State Board of Education. The Board voted

that when the revised articles of agreement were submitted the Commissioner of Education was "authorized to poll the members of the State Board for approval under the provisions of RSA 195:2." This was done and approval was unanimous. Thereupon the Commissioner submitted the articles to the various school districts for acceptance, stating in his letter of transmittal they had been approved by the State Board of Education under RSA 195:2. See RSA 195:18 V. The use of the poll in lieu of a meeting and vote is not ordinarily a recommended procedure but in the present case it was pursuant to a previous vote, involving a noncontroversial matter, and concerned approval of a matter that had been thoroughly discussed. *Cf. T.S.C. Motor Lines* v. *United States,* 186 F. Supp. 777, 784 ( D.S.D. Tex. 1960 ) *aff'd* 366 U. S. 419. Furthermore, the Board's action was confirmed and ratified by its subsequent vote in regular meeting to confirm the issuance of the certificate of formation by the Commissioner of Education. *Harris* v. *School District,* 28 N. H. 58, 65; *Storrs* v. *Manchester,* 88 N. H. 139, 144; *Rogers* v. *Concord,* 104 N. H. 47.

We have examined the votes and proceedings of the Board and find no invalidity or infirmity in its actions and specifically no violation of RSA 195:2, 18. See *Elwell* v. *Elwell,* 156 Me. 503; *Blackstone* v. *Rollins,* 157 Me. 85.

*Remanded.*

LAMPRON, J., did not sit; the others concurred.