BOARD OF EDUCATION OF THE BOROUGH OF CLIFFSIDE PARK IN THE COUNTY OF BERGEN, PETITIONER-RESPONDENT, v. MAYOR AND COUNCIL OF THE BOROUGH OF CLIFFSIDE PARK IN THE COUNTY OF BERGEN, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 22, 1968—Decided May 3, 1968.

Before Judges GOLDMANN, KILKENNY and CARTON.

*Mr. Paul L. Basile* argued the cause for appellant.

*Mr. Eznick Bogosian* argued the cause for respondent (*Messrs. Bauer, Bogosian & Whyte,* attorneys).

*Mr. Cassel R. Ruhlman, Jr.* argued the cause for New Jersey Education Association, *amicus curiae.*

The opinion of the Court was delivered by

CARTON, J. A. D. The Borough of Cliffside Park appeals that part of the determination of the State Board of Educa-

tion which restores to the local board of education school budget an item of $17,000 for premiums on Blue Cross — Blue Shield and Major Medical insurance covering all employees of the local board.

The facts are not in dispute. The voters rejected the local board's proposed 1967-68 budget at the annual election held on February 14, 1967. They also rejected the board's second budget proposal at the election held on February 28. It then became the duty of the governing body of the appellant municipality to fix the amount required for school purposes (*N. J. S.* 18A:22–37, formerly *N. J. S. A.* 18:7–82). Pursuant to that statute, on March 11, 1967 appellant certified to the county board of taxation a school appropriation of $1,270,908, $110,000 lower than the board's second budget proposal. The local board appealed to the Commissioner of Education requesting, among other things, reinstatement of the $17,000 item. The Commissioner sustained the board's contention as to this item. The State Board affirmed the Commissioner's decision. This *R. R.* 4:88–8 appeal followed.

The single issue presented is whether the Commissioner erred in restoring the $17,000 item to the local school budget.

*N. J. S. A.* 18:5–50.7*a* expressly authorized a local board of education to enter into an agreement with its employees to provide them with hospitalization insurance coverage:

"[T]he board of education * * * may pay as additional compensation to the individual members of the group or groups [of employees desiring to participate in a group hospitalization insurance plan], a part or all of the premiums on the group policy or policies * * *."

This provision was substantially re-enacted as *N. J. S.* 18*A*:16–10. Consequently, it is clear that the local board was permitted to include in its budget proposal the amount necessary to carry out the agreement it had made.

■ It is equally clear that once the board entered into the agreement, it was bound by its terms for two years as to all of the members of its full-time teaching staff. *N. J. S.* 18*A*:29–4.1 (formerly *N. J. S. A.* 18:13–5.1 and 5.2) provides, in pertinent part:

> "A board of education of any district may adopt a salary policy, including salary schedules for all full-time teaching staff members * * *. *Such policy and schedules shall be binding upon the adopting board* and upon all future boards in the same district *for a period of two years* * * *. *Every school budget* adopted, certified or approved by the board, the voters of the district, * * * the governing body * * * or the commissioner, as the case may be, *shall contain such amounts as may be necessary to fully implement such policy and schedules* for that budget year." (Emphasis added)

Thus, the local board is bound as to such employees for a two-year period by its "salary policy" and must provide funds "to fully implement such policy."

Ignoring the broader, more inclusive phrase "salary policy," appellant urges that "salary schedule" does not contemplate payment of hospitalization insurance premiums. While this fact may be conceded, and indeed appears obvious from the statutory definition of "salary schedules" (*N. J. S.* 18*A*:29–6, formerly *N. J. S. A.* 18:13–13.1), it is difficult to see how appellant's position is advanced.

The term "salary schedules" clearly refers to only one facet of "a salary policy" and the plain meaning of the latter phrase would seem to include what are commonly called "fringe benefits" of employment. Any other construction of the scope of *N. J. S.* 18*A*:29–4.1 would render the reference to "salary policy" mere surplusage.

■ We hold that "salary policy" includes, in addition to "salary schedules," such "fringe benefits" of employment as payment of hospitalization insurance premiums. The board having undertaken to pay such premiums, *N. J. S.* 18*A*:29–4.1 requires that funds be provided therefor and appellant was without authority to remove that item from the budget.

Appellant argues, however, that even if *N. J. S.* 18A:29-4.1 binds the local board to its salary policy for two years, it does so only with respect to "full-time teaching staff members" and has no effect upon policies made applicable to other board employees. While this argument may have some merit, we find no valid basis for making such a distinction between the teaching and non-teaching personnel in this case.

■ We note that when appellant resolved to eliminate the $17,000 from the local school budget, it did so without the slightest explanation or itemization of any categories of employees which would warrant making a distinction between them. This failure to do so would, in our estimation, justify a determination by the Commissioner that elimination of the entire item was arbitrary and therefore improper. See *Board of Education of Township of East Brunswick v. Township Council of Township of East Brunswick,* 48 *N. J.* 94, 105–106 (1966), where Justice Jacobs said:

"The governing body may, of course, seek to effect savings which will not impair the educational process. But its determinations must be independent ones properly related to educational considerations rather than voter reactions. * * * Where its action entails a significant aggregate reduction in the budget and a resulting appealable dispute with the local board of education, it should be accompanied by a detailed statement setting forth the governing body's underlying determinations and supporting reasons. This is particularly important since, on the board of education's appeal under *R. S.* 18:3–14, the Commissioner will undoubtedly want to know quickly what individual items in the budget the governing body found could properly be eliminated or curbed and on what basis it so found. * * *"

The record before us does not show what part of the $17,000 item is attributable to the non-teaching personnel, or any specific factual basis supporting appellant's claim that this portion should be eliminated. We shall not, therefore, exercise our original jurisdiction in this case to make independent findings. Nor do we believe the public interest requires or will be served by a remand to the Commissioner for the purpose of affording appellant an additional op-

portunity to bolster its claim for the elimination of a sum which, in terms of the total budget, is extremely small. The budget in question is the operating budget for the current year and should not be disturbed at this late hour to resolve a dispute of such limited effect.

Affirmed.