Coös,
Jan. 21, 1922.

### Arthur A. Toussaint & a. v. John A. Fogarty & a.

A vote by the city council of Berlin authorizing the issue of bonds to the amount of $400,000, for the erection of a high school building, though in excess of two per cent. of the last assessed valuation, but (with other indebtedness) not in excess of five per cent. thereof, is valid under Laws 1919, c. 262; Laws 1921, c. 85, Part vii, ss. 2–4.

Bill in Equity, by two resident tax payers of the city of Berlin against the officers of said city, *viz.,* mayor and members of the council, the treasurer and members of the board of education and members of a joint committee appointed to act on the matter of erecting a new high school building. The bill alleges that the city council of said city have voted to erect a high school building in said city and that the same is now being built; that the city council has voted to authorize the issue of bonds to the amount of $400,000 to procure funds for the construction of the same, and the mayor and city council are about to issue such bonds; that said sum of $400,000 is in excess of two per cent. of the last assessed valuation of the city but with other indebtedness of the city is not in excess of five per cent. of said valuation.

The prayer of the bill is that all acts and proceedings of the defendants and all votes of the city council relating to the expenditure of

money for the proposed high school building be decreed to be illegal and void and that the officers of the city be enjoined from borrowing any money to be used in the construction of said high school building in excess of a sum equal to two per cent. upon the valuation of said city.

The defendants appeared and demurred to the bill. Transferred without a ruling by *Marble*, J., from the December term, 1921, of the superior court.

*Matthew J. Ryan* (by brief and orally), for the plaintiffs.

*Ovide J. Coulombe* (by brief and orally), for the defendants.

PARSONS, C. J. The act of 1885, *c.* 43, which abolished the division of towns into school districts, did not destroy the school district system. It substituted for the several districts a single district, "composed of the whole town," *Ib., s.* 5; "a special, independent, and complete organization, and [with] officers of its own having exclusive authority for the superintendence and government of its schools and the administration of all its school affairs," a distinct and separate organization and corporation from the town. *Union School District* v. *District*, 71 N. H. 269, 270; *Sargent* v. *District*, 63 N. H. 528; *Wheeler* v. *Alton*, 68 N. H. 477, 478; *Loverin* v. *District*, 64 N. H. 102; *Sanborn Seminary* v. *Newton*, 73 N. H. 109; *Parker* v. *Lyndeborough*, 79 N. H. 99, 101.

The charter of the city of Berlin abolished the existing town and school district organizations, transferred the property of each to the city thereby created, and imposed upon the city the existing indebtedness of both town and district. Laws 1897, *c.* 121, *s.* 6. The preceding section is: "Said city shall constitute one school district, and the administration of all fiscal, prudential, and district affairs of said district shall be vested in the city council, except such as shall hereinafter be vested in the school board." "The general management and control of the public schools, and of the buildings and property pertaining thereto," is vested in a board of education "who shall be elected by the city council until such time as the city may vote to elect them at their annual ward meetings, or at special meetings called for that purpose." The charter further provides: "The appropriations for schools shall be vested in the city council, and the school board shall be accountable to the city council for its expenditures." *Ib., ss.* 15, 16. The charter contains no provisions for dis-

trict organization, officers, or meetings. It is plain that the charter did not create an independent school district composed of the whole city of Berlin. The situation is as if, when the division of towns into school districts was abolished in 1885, the statute had provided that all appropriations for school purposes should be made in town meeting and the school board should be appointed by the selectmen until the towns should vote to elect them in town meeting. For it is the city not the district which is authorized in a contingency to elect members of the school board. It is obvious that under such a statute it could not have been held, as it was in the cases above cited, that the financial responsibility for schools was vested in a separate district corporation independent of the town organization but it must have been concluded that the burden of maintaining schools was placed upon the town organization, and that the town and district instead of being distinct entities constituted but one, whether called town or district. Such is the case under the Berlin charter. The school property of the old district is transferred to the city; the debts of the district are made "for all purposes as the debts of said city," *Ib.*, s. 6, and the funds for the support of schools must be provided by the city organization. The duty as well as the power of providing funds necessary for school house erection is placed with the city, and as former debts for school purposes are debts of the city, additional liability for that purpose is to be incurred upon the credit of the city. The limit of the city's debt-incurring power is five per cent. of its last appraised valuation for taxation (Laws 1919, *c.* 262), an amount which is conceded to be in excess of the proposed total indebtedness of the city.

The plaintiffs' contention is based upon an act of the legislature of 1917, the effect of which, as applied to Berlin, it is plain the act of 1919 was passed to correct. The material portion of the act is, "Counties, cities and towns shall not incur debt to an amount exceeding three per cent.; school districts shall not incur debt to an amount exceeding two per cent.; and precincts shall not incur debt to an amount exceeding one per cent. of their last assessed valuation; . . . Whenever several municipal corporations possessing power to incur debt are identical with the town itself or cover or extend over identical territory or portions thereof, the town embracing such municipal corporations in one entity, and each of such municipal corporations shall so exercise this power to increase its debt under the foregoing limitations that the aggregate debt of the town and of its municipal corporations over and upon any territory of this state shall not exceed six per cent." Laws 1917, *c.* 129, *s.* 7. It is said

that the "city has a dual character with dual powers. In one corporate capacity it is a municipality for strictly municipal purposes; in the other it is a corporation for school purposes functioning through the machinery of the city officers" and "that as a school district it cannot incur debt in excess of the two per cent. limit fixed by the finance act. (1917, c. 129.)"

It is hardly necessary to discuss this proposition, for the act of 1919, which increased the debt limit of Berlin to five per cent. by the second section, repealed all acts and parts of acts inconsistent therewith. Laws 1919, c. 262, s. 2. So far as Berlin is concerned the statute relied upon is repealed. All restrictions of the act of 1917 upon the power of the city to borrow money for any purpose for which it may legally incur indebtedness, are avoided by the repeal.

Ordinarily a petition for an injunction in reliance upon a repealed statute would receive scant attention from the court. But there may be reasons not disclosed by the record why it is of public importance to have the fact of repeal specifically pointed out by the court. The question argued as to the charter of Berlin has therefore been considered. Under the charter but a single corporation is created, *viz.*, the city. The only name given the corporation is city. The fact that powers usually given school districts are given this corporation does not separate the powers or liabilities of the corporation. An act limiting the entire power of the corporation affects all the powers conferred upon it taken together. The city of Berlin "functioning" in whatever capacity it may legally function is authorized to incur debt up to the five per cent. limit. Under the statute of 1917 the city's debt limit would appear to have been three per cent. The necessity for the amendment procured in 1919 is apparent.

The plaintiffs have also apparently overlooked the act of 1897, c. 65, re-enacted in 1921 in the general revision of the school laws at the last session. Laws 1921, c. 85, Part VII, ss. 2–4. These sections define the powers and duties of school boards and city councils in the erection of school houses and provide for the return of the building to the care of the city council when no longer required for school purposes.

"Every municipality and county, for the construction and purchase of buildings and public improvements of a permanent nature, for the acquisition of land, for the purchase of departmental equipment of a lasting character . . . may issue the bonds or notes of such corporation." Laws 1917, c. 129, s. 6. As by its charter and

the general law the city has power to build the school house, its power to make the issue of bonds which the plaintiffs attack is not open to question.

*Bill dismissed.*

All concurred.