Hillsborough,
No. 6115.

GEORGE H. BAKER & *a.*

*v.*

HUDSON SCHOOL DISTRICT & *a.*

August 31, 1970.

*Leonard, Leonard, Prolman & Prunier* and *Richard W. Leonard,* for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden* and *Franklin Hollis,* for the defendants.

KENISON, C.J. Petition for a temporary and permanent injunction brought by the plaintiffs, a six-member majority of the Hudson Budget Committee, against the Hudson School District, its school board and chairman, and the Superintendent of Schools. The petition seeks to enjoin the defendants from expending any money or incurring liabilities on matters included in the appropriation made for the support of schools at the April 29, 1970 meeting of the school district, pending a determination of the validity of the appropriation.

At the hearing on the petition for temporary injunction the Superior Court (*Leahy,* C.J.) on an agreed statement of facts reserved and transferred to the supreme court without ruling all questions of law relating to the validity of the actions of the Budget Committee of the Town of Hudson and the validity of the actions taken at the special meeting of the Hudson School District held on April 29, 1970 pursuant to a school board request granted by the superior court. RSA 197:3.

The case was filed in the supreme court on August 11, 1970. The briefs of the parties were submitted on August 11 and August 27, 1970.

The question in this case is whether the legislature in granting authority under the Municipal Budget Law (RSA 32:8 (supp) and 9) to the voters at an annual or special meeting to increase the budget by not more than 10% of the total amount specified in the budget recommended by the Budget Committee, intended that the voters at the meeting (within the limitations imposed by statute) share the responsibility with the Budget Committee

in appropriating funds by exercising a judgment independent of and unfettered by the judgment of the Budget Committee as to what the maximum total budget shall be. For the reasons stated hereafter we think the answer to this question is "yes."

The Budget Committee majority recommended a smaller school budget than requested by the School Board. The majority of the Budget Committee in its report stated that they "are of the honest opinion that the budget present, $1,760,000.00, with the *allowable increase* of $176,000.00, is a fair and just budget and urge the School District voters to adopt said budget *with the increase.*" ( Emphasis added ). The budget recommendations did not recommend sufficient funds to pay fully statutory obligations, such as the payment of principal on debt. The recommendations of the Budget Committee had been rejected decisively by the voters at the annual school district meeting on March 4, 1970 by a vote of 301 to 155, and were again rejected at the special meeting on April 29, 1970 by a vote of 230 to 105.

After rejecting the Budget Committee's recommendation of the total budget of $1,936,000 ( $1,760,000 + 10% ) the voters adopted a total budget of $1,932,000 with the understanding that the Tax Commission would add $170,055, which was the amount owed for the payment of principal debt. This resulted in a total appropriation of $2,102,055. This was a valid appropriation, as it was within the amount authorized by RSA 32:9 on these facts and was within the total budget figure provided as a maximum figure in the warrant posted for the special school district meeting of April 29, 1970.

The present controversy arises from a common problem. A school board is charged with managing a local school system to the best of its ability. Since almost every improvement costs money, there is an increasing burden on the local taxpayer. This same taxpayer must also support other municipal services with each department attempting to increase its budget to perform as well as possible. An arbiter, such as the Budget Committee, is given power by the legislature to reconcile these appropriation requests to maintain the tax load within manageable proportions.

Some jurisdictions, apparently fearing the penurious nature of officials unfamiliar with school requirements, have given the school board the final say on the size of appropriations. *See Day* v. *City of Newton,* 342 Mass. 568, 174 N.E.2d 426. Other jurisdictions have given a supervisory committee the final say as

to the size of the appropriation but left the distribution of the appropriation entirely within the hands of the school board. *See Board of Education* v. *Board of Finance,* 127 Conn. 345, 16 A.2d 601; *Fowler* v. *Town of Enfield,* 138 Conn. 521, 86 A.2d 662; *Board of Education* v. *Rogers,* 278 N.Y. 66, 15 N.E.2d 401. Some jurisdictions provide for appeal to a state education commission to settle such disputes. *Cliffside Park Borough Bd. of Ed.* v. *Mayor & Council,* 100 N.J. Super. 490, 242 A.2d 649.

"'In any particular instance the degree of control to be exercised by either schoolboard members or municipal officers must be ascertained by reference to statutory and charter provisions. Under no circumstances, however, will municipal officers be permitted to exercise any greater degree of control over school finance than that clearly intended by the legislature.' Edwards, The Courts and Public Schools 106 (rev. *ed.* 1955). In New Hampshire the extent to which school finances are subject to municipal control in each city is determined by its charter. *Toussaint* v. *Fogarty,* 80 N.H. 286; *Wilcox* v. *Burnham,* 98 N.H. 64, 65." *Franklin* v. *Hinds,* 101 N.H. 344, 345-46, 143 A.2d 111, 113.

The New Hampshire cases have recognized a policy favoring financial independence for school districts wherever possible. *Nashua Board of Education* v. *Vagge,* 102 N.H. 457, 159 A.2d 158. This is in line with the recommendations of the Report of the [Legislative] Commission to Study the State Education System (1946) quoted in *Franklin* v. *Hinds, supra* at 346, 143 A.2d at 113; "The kind of education the district wants to buy, for it comes down to just that, had better be the responsibility of their elected representatives, the school board, and *the people of the district themselves.* "(Emphasis added).

RSA 32:4 through 32:9 evidences a legislative scheme to allow the voters, who must bear the burden of taxation, to override the judgment of the Budget Committee by appropriating up to 10% more than the Budget Committee honestly believes is appropriate. Although the Budget Committee does put an upper limit on appropriations, it should also function as an information agency with special fiscal knowledge to assist the electorate in voting intelligently on budget problems. *Hecker* v. *McKernan,* 105 N.H. 195, 197, 196 A.2d 38, 40. The implication is that the voters will be left with some options which the Budget Com-

mittee may not undermine through a subterfuge. *See Attorney-General* v. *Littlefield,* 78 N.H. 185, 98 A. 38. It is clear from the letter written to the School District Moderator by a majority of the Budget Committee that the Budget Committee was relying upon the voters to increase their recommendation by 10%. Only with this increase did the Budget Committee feel that the school budget would be "fair and workable." Nothing in RSA ch. 32 indicates that in formulating its recommendations, the Budget Committee is entitled to rely upon the power of the voters to increase the appropriation by 10%. Interpreting RSA ch. 32 in such a way would give the Budget Committee absolute control over the total expenditure for schools in contravention of the policy in this state of allowing the voters to control appropriations.

"[V]otes passed at town meetings should be liberally construed, and if they fall within the authorized power of the town, subtle distinctions will not be made to defeat the plain intent of the voters. *Amey* v. *Pittsburg School District,* 95 N.H. 386, 388. Where two constructions of a statute are permissible, the one which preserves the validity of the vote must prevail." *Hecker* v. *McKernan,* 105 N.H. 195, 196, 196 A.2d 38, 39.

We conclude that the school district made a valid appropriation of $1,932,000, plus $170,055; that the total amount to be raised by taxation shall be the sum of these two items ($2,102,055), minus the total of such amounts of revenue as shall be finally approved by the State Tax Commission.

*Judgment for the defendants.*

All concurred.