Belknap,
No. 6353.

## Laconia Board of Education

*v.*

## City of Laconia.

December 23, 1971.

*Nighswander, Lord, Martin & KillKelley* and *Bradley F. Kidder* ( *Mr. Arthur H. Nighswander* orally ) for the plaintiff.

*Colin A. Norberg,* City Solicitor ( by brief and orally ), for the defendant.

KENISON, C.J.   This litigation presents a recurring and troublesome problem in city finances. Although the public statutes and the city charter determine the respective powers of the city council and the school board of education these guidelines are necessarily general in character. The parties have asked us to settle this litigation and also to provide some guidance for the future. This court can only seek to provide the correct answers to the solvable problems and the least erroneous answers to the unsolvable problems.

The principal issue in this case is whether the Laconia School Board may compel the city to appropriate funds for services and programs that in the judgment of the school board exercised in good faith are essential to an adequate educational system.

This case originated by a petition for a declaratory judgment to determine the rights and duties of the Laconia City Council and the Board of Education with respect to school district appropriations. The petition requested that the trial court order the city council to increase the school district appropriation to the amount requested by the school board in its original budget or to such lesser amount as would be adequate to enable the board to meet its statutory obligations. The trial court made certain findings and rulings among which are the following: " The Council . . . has ultimate power to authorize the spending of public money ( and the ultimate responsibility, as well to vote such authorization in a timely fashion ) "; there was " no fault, no bad faith, no negligence " on anyone's part; the " present Laconia School Budget will have both short-range and long-range effects upon the quality of education in Laconia ". The Trial Court ( *Johnson,* J. ) concluded that it should not intervene, denied " the requests in the plaintiff's petition " and transferred the plaintiff's exceptions thereto.

The city of Laconia adopted a revised charter on April 2, 1970 and the charter became operational on February 3, 1971. *See* RSA 49-A:42-92. In April 1971 the school board was informed by the mayor that " increases in the school budget must be held down at all costs in all areas, including salaries and capital acquisitions ". During that month the school board sub-

mitted a budget which was $283,500 more than the previous year and the school board entered into contracts with the school district's teachers and for the school lunch and athletic programs. The budget in the amount of $2,611,317 was submitted during the first week of May. In June, pursuant to authorization from the city council, the school board adopted a dual enrollment plan involving grades 5, 6, 7 and 8 of the Catholic schools in Laconia. The estimated cost of this program was $70,500 and was to be entirely funded by the State ( but was not ) under the authority of RSA 198:21 ( supp. ); Laws 1970, 51:2. This increased the budget requested by the school board to $2,681,783, which would be reduced by an estimated school district revenue of about $507,000 and would make the total net appropriation requested for the school district approximately $2,175,000. Minor adjustments were made in the school district budget after discussions with the city manager and the superintendent of schools. The teachers reported for duty under their contracts on September 7 and the students began to attend classes on September 8. The school board had entered into all contracts they thought necessary or desirable in connection with the 1971-72 school year before September 8, 1971.

Budget hearings on the school district budget were held on September 22 and September 29 attended by several hundred citizens, the overwhelming majority of whom demanded substantial reductions in the budget. On October 11th the school board at the request of the city council submitted a list of suggested reductions totalling about $200,000. On October 14th the council made an across-the-board reduction of $175,000 in the school district budget which made the gross appropriation for school district purposes $2,506,783, or a net appropriation of about $2,000,000. This appropriation was more than the appropriation for the previous year. A larger cut was made on the municipal side of the budget. Despite the budget reductions, the 1971 tax rate in Laconia rose to $42.20 per $1000 on a 93% valuation, whereas the 1970 tax rate was $37.60 per $1000 on a 100% valuation.

The public statutes and the local charter determine in general terms the extent to which the school district administration by the local board of education is subject to financial control by municipal bodies. *Baker* v. *Hudson School District*, 110 N.H. 389, 269 A.2d 128 ( 1970 ); *Wilcox* v. *Burnham*, 98 N.H. 64, 65, 94 A.2d 378, 379 ( 1953 ); *Toussaint* v. *Foggarty*, 80 N.H. 286,

116 A. 636 ( 1922 ); Edwards, The Courts and the Public Schools 84 ( rev. ed. 1955 ).

Section 3:07 of the Revised Charter of the City of Laconia ( 1970 ) grants to the city council " all the powers and . . . duties conferred or imposed upon city councils in convention, city councils voting concurrently, or boards of mayor and aldermen acting separately, by chapters 44 to 48 inclusive, of the RSA or other general law . . . " Article IX, section 20 grants to the board of education " the general management and control of the public schools, and of the buildings and property pertaining thereto ". Section 1:03 provides that " the administration of all fiscal and prudential affairs of said school district, not vested in the board of education by this act, shall be exercised by the city council ". It is clear from prior decisions of this court that under statutory or charter provisions similar to these Laconia charter provisions the city council is the appropriating agency and the board of education is the manager and controller of the public schools within the limits of the appropriation made by the city council. *Franklin* v. *Hinds*, 101 N.H. 344, 143 A.2d 111 ( 1958 ). It is equally clear that the power of the city council to appropriate funds for school district purposes is subject to a requirement that it appropriate the funds necessary to meet the obligations imposed under the minimum standards established by the State Board of Education under the authority of RSA 186:5. *Id.* at 345, 143 A.2d at 111.

There is no question that the city council is the appropriating authority and that appropriations for city purposes must be made by them. However, it is a little misleading to say that the city council has the absolute, ultimate and exclusive control over the city budget including school appropriations. The city's power over appropriations is subject to at least two limitations. The first one is that the city council cannot refuse to appropriate money for statutory mandated services and programs required by the statutes. Examples of this, although the list is not exclusive, are RSA 189:1, 1-a ( supp. ), 12, 14-a, 24 ( supp. ), 39 ( supp ), and RSA 198:1-3. The second one is that the city council cannot refuse to appropriate money to meet the minimum standards required by the State Board of Education. RSA 186:5; *Jones* v. *Merrimack Valley School District*, 107 N.H. 144, 148, 218 A.2d 55, 59 ( 1966 ); *Coleman* v. *School District*, 87 N.H. 465, 470, 183 A. 586, 588 ( 1936 ); *State* v. *Hoyt*, 84 N.H. 38, 146 A. 170 ( 1929 ); *see* Garber and Reutter, The Yearbook Of School Law-

1969, ch. 6. In addition to the requirements mandated by statute or those required as minimum standards under the rules and regulations of the State Board of Education there are many educational programs which are desirable but they are in an optional or elective status. Such programs may be eliminated or reduced by reason of insufficient appropriations by the city council, even though desired by the school board. In this connection it should be noted that the trial court correctly found and ruled that the school board had the authority to determmine the areas of the school district budget to be affected by the $175,000 across-the-board reduction made by the city council. *Ashley* v. *Rye School District*, 111 N.H. 54, 274 A.2d 795 ( 1971 ); *Franklin* v. *Hinds supra*; Edwards, The Courts and the Public Schools 108 ( rev. ed. 1955 ).

Presumably the school board will attempt to reduce the school district budget by terminating or modifying the services and programs that are not required by statutes or subject to the minimum requirements of the rules and regulations of the State Board of Education. There may be a point at which reductions and modifications to meet the budget reduction ordered by the city council would result in educational services and programs that are less than the statutes or the State board's minimum standards require. It is not clear to us from the record whether that point will be reached in this case. When such a situation occurs the school board may present evidence to substantiate that situation and thus be entitled to obtain from the city council the funds necessary to provide the required educational program. *See Ring* v. *City of Woburn*, 311 Mass. 679, 43 N.E.2d 8 ( 1942 ); Edwards, *supra* at 109.

The school board contends that since it has contracted for services and programs for the school year it cannot or may not be able to make any reductions or modifications in the school district budget without breaching contracts. The trial court did not rule on this breach of contract contention and neither do we. There is no clear evidence in the record that a termination or modification of a contract will lead to court action and none of the parties with whom the school board contracted are parties to this case.

It was suggested during oral argument in this case that the present system of financing the Laconia school system by a property tax is a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. *Serrano* v. *Priest*, 5 Cal. 3d 584, 487 P.2d 1241, 96 Cal. Rptr. 601 ( 1971 ).

*Contra, Burruss* v. *Wilkerson*, 310 F. Supp. 572 ( W.D. Va. 1969 ), *aff'd* 397 U.S. 44; *McInnis* v. *Shapiro*, 293 F. Supp. 327 ( N.D. Ill. 1968 ) *aff'd sub nom. McInnis* v. *Ogilvie*, 394 U.S. 322. There are several reasons why we purposely do not address our attention to this contention. First, this case was expedited for hearing at the request of the parties and the court rule as to the time of filing briefs was waived Supreme Court Rule 6; RSA 490 App. R. 6. One of the parties argued orally before his brief was prepared which was filed later in the week. One of the parties made no reference to this contention in his brief. Secondly, a resolution of this contention would require the considered attention of all interested persons and agencies and would also require a financial and statistical background which is not available in this case or in this record. *Van Dusartz* v. *Hatfield*, 40 U.S.L.W. 2228 ( D. Minn. Oct. 12, 1971 ). Thirdly, it is doubtful that any consideration of this contention would have any retroactive effect whatever result was reached. See October 21, 1971 modification of opinion in *Serrano* v. *Priest supra* reported in 40 U.S.L.W. 2339 where it was stated that the "existing system of school financing is to remain in effect until it has been found unconstitutional and replaced by an appropriate new system ". Accordingly, in the present case the order is

*Declaratory judgment in accordance with this opinion.*

GRIFFITH, J. did not sit; the others concurred.