Hillsborough
No. 7317

DENNIS J. SULLIVAN, MAYOR,
CITY OF NASHUA

v.

MARGARET Q. FLYNN, PRESIDENT,
NASHUA BOARD OF EDUCATION

September 30, 1976

*H. Philip Howorth,* corporation counsel, by brief and orally, for the plaintiff.

*Richard W. Leonard,* by brief and orally, for the defendant school board.

DUNCAN, J. This action arises out of a controversy between the plaintiff, mayor of Nashua, and the Nashua School Board, which first surfaced in 1973. From the record, it appears that in that year the plaintiff with the approval of the board of aldermen made certain cuts in the school district budget for fiscal 1973-74 amounting to $415,835, $84,300 of which was taken from the payroll account and $331,535 from nonpayroll items. No restoration of any portion of these amounts was made. In 1974, the plaintiff and the board of aldermen again reduced the proposed school budget for fiscal 1974-75, this time by $469,452. Of this amount, $171,472 was taken from the payroll account and $297,980 from other items.

On February 1, 1975, faced with a deficit in certain accounts, the Nashua School Board requested the plaintiff and board of aldermen to transfer $124,825 from the city's "contingency account" to those accounts in the school budget. Included in this amount was a request for $94,136 to fund the teachers' payroll

account. The plaintiff and board of aldermen refused to authorize the transfer.

For fiscal 1975-76, the mayor and aldermen cut $1,000,000 from the school budget. Approximately $450,000 of this has been restored, but the balance of the cut will apparently stand over the objections of the school board. The plaintiff, in his capacity as the mayor of Nashua, brought this action seeking a determination that "the Board of Aldermen of the City of Nashua have full control over the budget of the school department of the City of Nashua subject only to the requirement . . . that they appropriate monies required for the maintenance of statutory mandated services and programs required by the State of New Hampshire and for the maintenance of minimum standards required by the State Board of Education." The parties submitted an agreed statement of facts and, after hearing, the petition was denied by *Perkins, J.,* the court ruling that the "Nashua Board of Education has exclusive authority to set salaries and wages of its teachers and other employees."

Following this order, the plaintiff filed a "motion for modification of decree" seeking a ruling that the otherwise exclusive authority of the board of education must be exercised within the limits imposed by the total appropriation made by the mayor and board of aldermen. By order dated May 28, 1975, the motion for modification was denied. The court then ruled that "the Board of Aldermen is required to appropriate whatever funds . . . are needed for the compensation of the school employees as determined by the Board of Education . . . ." To this order the plaintiff seasonably excepted, and the questions of law raised by the rulings below were reserved and transferred.

"The public statutes and the local charter determine in general terms the extent to which the school district administration by the local board of education is subject to financial control by municipal bodies." *Laconia Bd. of Educ. v. Laconia,* 111 N.H. 389, 391, 285 A.2d 793, 795 (1971). In the present case, the school district and the city are coterminous and constitute a single corporation. *Wilcox v. Burnham,* 98 N.H. 64, 94 A.2d 378 (1953), held that the Nashua Board of Education had the authority to fix the compensation of school employees without limitation by the mayor and board of aldermen. *Id.* at 67-68, 94 A.2d at 380-81. Underpinning the *Wilcox* decision were sections 42 and 74 of the Nashua city charter as then constituted. Section 74 provided then as now that the board of education "shall perform all such duties as the

School Committee in towns is required by law to perform ....."
After examining the relevant statutes in light of historical prac-
tice, it was concluded that one of the duties of school committees
was to select and hire teachers and to fix their compensation.
Thus, it was concluded that the city charter of 1913 conferred this
particular authority upon the Nashua board of education.

It was reasoned that this position was further confirmed by sec-
tion 42 of the city charter which read in part: "In all cases where
salaries or wages for services are paid from the municipal trea-
sury, the compensation shall be determined by the board of
aldermen ... excepting those employed in connection with the
schools." Laws 1913, ch. 427, pt. 1:42. The exception
strengthened the conclusion that the board of education was
vested with plenary authority over the school budget.

Had nothing changed in the interim since *Wilcox,* the mayor
concedes that he would be without color of authority to assert
control over the school budget. However, in 1969, the legislature
adopted a series of amendments to the Nashua city charter. Laws
1969, ch. 627. Section 11 of chapter 627 of the laws of 1969 com-
pletely rewrote section 42 of the city charter dealing with the
mayor's authority to appoint various city officials. By this amend-
ment, the entire provision concerning the authority of the alder-
men to set salaries for all city workers "excepting those employed
in connection with the schools" was deleted. In point of fact, the
new section 42 makes no mention of salaries whatsoever. The
mayor argues that the 1969 amendments impliedly overruled the
*Wilcox* decision with the result that ultimate authority over the
school budget in Nashua now rests with the mayor and board of
aldermen.

The apparent purpose behind the 1969 amendments to the city
charter was to enlarge mayoral prerogatives and to correspond-
ingly reduce those of the board of aldermen. *See* Laws 1969,
627:9, :11. This necessitated a comprehensive revision of section
42 of the city charter so that the present and former sections 42
bear little resemblance to one another. However there is no indi-
cation that the 1969 amendments were meant to alter the mayor's
authority with respect to school expenditures. In fact there was
evidence to the contrary. A member of the House-Senate Confer-
ence Committee which reported the bill testified that the amend-
ments were never intended to change the fiscal authority of the
board of education, the police commission, or the library commis-
sion, and that the legislative services committee was so instructed

prior to finally drafting the amendments. There was further testimony that as presented to the voters of Nashua the amendments were not intended to change the authority of the board of education with respect to fiscal matters. To infer that the 1969 amendments were intended to effect such a profound shift in authority from the board of education to the mayor, would be to invest the amendments with a greater force than the legislature intended or the voters contemplated. *Franklin v. Hinds,* 101 N.H. 344, 346, 143 A.2d 111, 113 (1958).

Furthermore, *Wilcox* relied on more than the language of the former section 42 in concluding that the board has primary authority with respect to the school budget. The decision rested primarily on other charter provisions and on state statutes chief among which was section 74 of the city charter mandating that the board shall perform all the duties which the school committee in towns is required to perform. Section 74 survived the 1969 amendments without revision. Thus, no revision of section 42, short of an explicit provision, could accomplish the result which the plaintiff urges. In other words, although the language of the former section 42 lent some support to the conclusion that the Nashua board of education was fiscally autonomous in fixing salaries and wages, that section was considered to be only confirmatory of the provisions of section 74. *Wilcox v. Burnham,* 98 N.H. 64, 66-67, 94 A.2d 378, 380 (1953).

RSA 186:5 provides that the State board of education "shall have the same powers of management, supervision, and direction over all public schools in this state as the directors of a business corporation have over its business, except as otherwise limited by law." It may "make all rules and regulations necessary ... to secure the efficient administration of the public schools ...." *Id.* Pursuant to this authority the State board has adopted a regulation which stipulates, "The [local] school boards shall determine the salary and term of employment of all teachers ...." The plaintiff does not attack the validity of this regulation although it is clearly contrary to the position which he assumes. Moreover, it is consistent with the general scheme of legislation which preserves the fiscal autonomy of local school boards except as expressly limited by applicable charter provisions. RSA chs. 186, 189; *Laconia Bd. of Educ. v. Laconia,* 111 N.H. 389, 392, 285 A.2d 793, 795 (1971). There is presently no such limitation in the Nashua city charter.

The plaintiff relies to some extent on the decision of this court in *Laconia Board of Education v. Laconia supra.* That case is in no

way inconsistent with our conclusions in the case at bar. There, the Laconia board of education sought to compel the city to appropriate funds which in the board's judgment were necessary to an adequate educational system. It was held that the discretion to appropriate funds in excess of those required to meet the minimum standards of the State board of education was vested in the city council. However, that decision rested in large part on provisions of the Laconia city charter which reserved this right to the council. *Id.* at 392, 285 A.2d at 795. In the absence of same or similar provisions in the Nashua charter, the *Laconia* case cannot control. The Nashua board has the authority to fix the compensation of its employees without regard to limitations imposed by the mayor or aldermen. *See Tappan v. Shaw,* 113 N.H. 353, 306 A.2d 762 (1973).

This conclusion does not upset the political decision-making process in Nashua. The board of education, charged with the fiscal management of the schools, is composed of nine members elected at large by the voters of Nashua. Nashua City Charter § 75. There is no guarantee that the will of the people will be more effectively voiced through the mayor and aldermen than through the board of education. Nor is there any suggestion that the members of the board are insensitive to the "kind of education the district wants to buy." Report of the [Legislative] Commission to Study the State Educational System 167 (1946). Spending decisions of the school board necessarily come under public scrutiny and the city charter adequately provides the voters of Nashua with political control over those decisions. The history of the Nashua city charter and the 1969 amendments indicate that the board of education is charged with the fiscal management of the schools including the authority to require sums in excess of the minimums required by State law.

*Exceptions overruled.*

LAMPRON, J., did not sit; the others concurred.