**WEST WARWICK SCHOOL COMMITTEE et al.**

v.

**Joseph O. SOULIERE et al.**

**No. 93–240–Appeal.**

Supreme Court of Rhode Island.

June 29, 1993.

David G. Lussier, West Warwick, Katherine Merolla, Providence, for plaintiffs.

Lauren Jones, Robert D. Harrop, Providence, Thomas Petronio, Johnston, for defendants.

## OPINION

WEISBERGER, Justice.

This case came before a hearing panel of this court for oral argument on May 18, 1993, pursuant to an order of expedited hearing that had been issued by the duty justice. The town of West Warwick, through its various officials, had appealed from a judgment for mandamus entered in the Superior Court that had the effect of enforcing a decision of the State Commissioner of Elementary and Secondary Education (commissioner). This judgment ordered the tax assessor of the town of West Warwick to levy additional taxes to fund an amount required by the commissioner to pay the sum of $1,435,000, which was necessary to implement the applicable collective-bargaining agreement and to provide the educational services required by law. We have affirmed the judgment of the Superior Court in an order dated May 18, 1993. This opinion sets forth the reasons underlying that order. The facts of the case insofar as pertinent to this appeal are as follows.

On September 29, 1992, the town council and the school committee of the town of West Warwick submitted to the financial town meeting a budget for the purpose of implementing the expenses of operating the town's schools for the fiscal year 1992–93 in the amount of $23,443,270. The requested appropriation was presented in two parts. Of the total sum, the amount of $21,927,709 was approved and an additional proposed appropriation in the amount of $1,600,000 was not approved, leaving a shortfall of approximately $1,500,000 in the school committee's requested budget.

Thereafter, on September 30, 1992, the school committee filed an appeal with the commissioner in accordance with the provisions of G.L.1956 (1988 Reenactment) § 16–39–1. The school committee contended before the commissioner that the appropriation made by the financial town meeting was insufficient to fund expenses necessary to implement the collective-bargaining agreements with the employees of the school system and to provide educational services mandated by state law.

Pursuant to this appeal the commissioner appointed a special visitor, Dr. Frank Pontarelli, to conduct an investigation of the financial condition of the West Warwick school system; to make findings of fact concerning the funds necessary to implement the collective-bargaining agreements; and to provide those educational services mandated by the law of the State of Rhode Island. Doctor Pontarelli made a report to the commissioner. In this report Dr. Pontarelli concluded that it was necessary for the town to increase the amount budgeted for the operation of the school system by $1,435,000. He further suggested that the town council did not dispute the fact that this amount was needed in order to fund the schools for the fiscal year 1992–93. The commissioner adopted the special visitor's report, including his findings of fact, and issued the following order:

"West Warwick is required to provide the West Warwick school committee with the total sum of $23,362,790 in order to allow the committee *to fund the applicable collective bargaining agreement and to provide the services required by law.*" (Emphasis added.)

I

THE JUDGMENT FOR MANDAMUS

It is significant to note that the town of West Warwick did not appeal this decision as would have been permitted by § 16–39–3. Under this provision the town, through its solicitor, could have sought review by the State Board of Regents for Elementary and Secondary Education (board of regents). Thereafter, if aggrieved by the decision of the board of

regents, the town could have sought review in this court by a petition for common-law certiorari pursuant to § 16–39–4. *See School Committee of Providence v. Board of Regents for Education,* 429 A.2d 1297 (R.I.1981).

By virtue of its having failed to appeal the decision of the board of regents, the town is now faced with a final decision wherein the findings of fact and conclusions of law are res adjudicata. This final decision may only be collaterally attacked for lack of subject-matter jurisdiction. *George v. Infantolino,* 446 A.2d 757 (R.I. 1982); *Pratt v. Pratt,* 431 A.2d 405 (R.I. 1981); *Hartt v. Hartt,* 121 R.I. 220, 397 A.2d 518 (1979). Indeed, the role of the Superior Court in this controversy was limited to the enforcement of the final decision of the commissioner in accordance with § 16–39–3.1, which states:

> "All final decisions made after a hearing by the commissioner * * * or the board of regents * * * and which are not subject to further judicial or administrative review, shall be enforceable by mandamus or any other suitable civil action in the superior court for Providence County at the request of any interested party."

■ Therefore, the trial justice was limited to the initial determination of whether the commissioner had subject-matter jurisdiction. She held that he had subject-matter jurisdiction pursuant to § 16–39–1, which in the broadest terms authorizes any matter of dispute arising under any law relating to schools or education to be appealed to the commissioner who "after notice to the parties interested * * * shall examine and decide the same without cost to the parties involved." The trial justice properly relied upon our opinion in *Exeter–West Greenwich Regional School District v. Exeter–West Greenwich Teachers' Association,* 489 A.2d 1010 (R.I.1985), wherein we decided a number of questions and enunciated principles that are controlling in the case at bar.

In that case we explicitly recognized the authority of the commissioner and the board of regents to render final decisions in respect to the funding of collective-bargaining agreements between school committees and employees and of other educational services mandated by state law. We also authorized the enforcement of said decisions by recourse to the Superior Court pursuant to § 16–39–3.1. *Exeter–West Greenwich,* 489 A.2d at 1020–21.

In *Exeter–West Greenwich* we had occasion to consider whether a regional district financial meeting was required to fund a collective-bargaining agreement, which had been entered into by the district school committee. We also considered whether an appropriating authority, either a municipal council or a financial town meeting, was required to fund services mandated by law incident to the operation of a public school system. In an extensive and detailed opinion based upon precedents from New Hampshire, *Sullivan v. Flynn,* 116 N.H. 547, 365 A.2d 1052 (1976), and Massachusetts, *Boston Teachers Union, Local 66 v. School Committee of Boston,* 386 Mass. 197, 434 N.E.2d 1258 (1982), we balanced the relationship between a school committee in this state and the appropriating authority. In doing so, we read in pari materia a number of statutes authorizing collective bargaining with those portions of the general laws empowering school committees to contract as well as the statutory provisions concerning the appropriation of funds by municipal councils or financial town meetings or financial district meetings. Our conclusion was encapsulated in the following doctrinal observations:

> "The school committee and the towns of Exeter and West Greenwich argue that because the appropriating authority is a body distinct from the school committee, any contracts with the teachers or others are subject to the appropriating authority of the district financial meeting, and such contracts may be implemented only to the extent they are funded by the district financial meeting. They argue that the appropriating body has absolute authority in fiscal matters. That argument not only is incorrect but could also lead to chaos in the public school system." *Exeter–West Greenwich,* 489 A.2d at 1017–18.

"If school committees are authorized by law to enter into binding agreements, which they are, then the community is bound to fund that agreement through its appropriating authority, whether that authority is the city or town council, a financial town meeting, or a district financial meeting. To conclude otherwise would completely negate the statutory power of the school committee to bargain and contract; this would mean that the Legislature has given with one hand and taken away with the other. We will 'not ascribe to the Legislature an intent to enact legislation that is devoid of any purpose, is inefficacious, or is nugatory.' *Cocchini v. City of Providence*, R.I., 479 A.2d 108, 111 (R.I.1984) (citing *Kingsley v. Miller*, 120 R.I. 372, 388 A.2d 357 (1978))." 489 A.2d at 1019.

"Therefore, we hold that a city or town is bound by and must fund the valid collective-bargaining agreements entered into by its school committee as well as other obligations incurred in the providing of services mandated by law." *Id.* at 1020.

"To those who assert that we are upsetting the political balance between a school committee's authority to contract and the town or city council's or financial town meeting's authority to appropriate, we answer that this is not a situation created by the courts. The Constitution and the Legislature in its several enactments over the years have erected a structure of laws that we are under a duty to read together and interpret. Having done so, we have come to the conclusion and we emphasize that budgets submitted by school committees to the appropriating authority to fund collective-bargaining agreements and to fund mandated programs and services must be funded." *Id.*

In our opinion in *Exeter–West Greenwich*, we considered arguments identical to those which are now presented by the town of West Warwick and responded to those arguments by a holding that left no doubt of the responsibility of appropriating bodies, including a financial town meeting, to fund obligations under collective-bargaining agreements and mandated programs and services. We perceive no distinction between the issues presented in that case and the issues posed in the case at bar. Indeed this case is even more compelling since the commissioner's decision comes before us not for review but for enforcement as a final judgment, unappealed and insulated from attack in regard to its findings and conclusions. In the circumstances the trial justice had no choice save to enforce this decision in accordance with our holding in *Exeter–West Greenwich, supra,* wherein we ordered the Superior Court to enter a judgment in enforcement of the order of the board of regents for education (which had affirmed the decisions of the commissioner of education). We further held that the Superior Court judgment would constitute a debt against the towns of Exeter and West Greenwich to be implemented by the tax assessors of those towns pursuant to G.L.1956 (1980 Reenactment) §§ 45–15–6 and 45–15–7. *Exeter–West Greenwich,* 489 A.2d at 1021.

■ In the instant case the trial justice, citing the identical statutes, held that the sum ordered by the commissioner constituted a debt against the town of West Warwick. The trial justice further held that a judgment for mandamus should issue ordering defendant tax assessor to assess the taxable property of the town of West Warwick and ordering the tax collector and defendants to collect sufficient taxes to raise the sum of $1,435,081 (together with all incidental charges, costs, and expenses of the assessors and collector in assessing and collecting that tax). Both the trial justice and the commissioner had found that without this additional sum the town had no current ability to fund the school department at the level required for it to meet its legal obligations beyond May 20, 1993. In so holding, the trial justice correctly followed the relevant statutes as well as our holding in *Exeter–West Greenwich, supra.* Her issuance of mandamus was correct. We affirm the judgment of the Superior Court.

## II

### THE MOTION TO INTERVENE

A group of taxpayers represented by a nonprofit corporation named "We the People of West Warwick" sought to intervene in the action before the Superior Court. The trial justice denied the motion to intervene on the ground that the intervenors had no standing since their interest as taxpayers gave rise to no personal stake beyond that shared by all other members of the public at large or the taxpayers of the town. She also pointed out that the motion to intervene came at a point at which the trial court had very limited authority save to enforce the final decision of the commissioner. She suggested that the appropriate time for intervention (if allowable at all) would have been at the administrative proceeding before the commissioner.

With this decision we agree. Both the town and the school committee are in agreement that the denial of the motion to intervene by the trial justice was proper. They agree that the taxpayers failed to show any actual or concrete wrong beyond a general grievance common to all taxpayers. *See Ianero v. Town of Johnston*, 477 A.2d 619, 621 (R.I.1984); *Berberian v. Solomon*, 122 R.I. 259, 261, 405 A.2d 1178, 1180 (1979). The law on this point is clear. The intervention sought was not timely. The purported intervenors failed to establish standing. The trial justice did not err in denying the motion to intervene.

For the reasons stated, the appeal of the town of West Warwick through its various officials is denied and dismissed. The judgment of the Superior Court is affirmed. The papers in the case may be remanded to the Superior Court.

FAY, C.J., did not participate.