Carol A. CUMMINGS

v.

**William H. SHOREY, in his capacity as Tax Assessor for the Town of Middletown.**

**No. 99–117–Appeal.**

Supreme Court of Rhode Island.

Nov. 16, 2000.

Joseph R. Palumbo, Jr., Middletown, For Plaintiff.

Turner C. Scott, For Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

The plaintiff, Carol A. Cummings, appealed to the Rhode Island Supreme Court after her dispute over real estate taxes resulted in a judgment in favor of William H. Shorey (tax assessor or defendant), in his capacity as tax assessor of Middletown, Rhode Island. The plaintiff claimed that taxes on her property had been assessed illegally and that the revaluation was either not certified pursuant to law or was certified late, and she sought a refund of all taxes collected. We disagree and affirm the judgment.

### Facts and Procedural History

The plaintiff owns several parcels of ratable real estate in the Town of Middletown, Rhode Island. In the course of the town's revaluation of all taxable real estate, plaintiff initially sought relief from the Middletown Board of Tax Appeals (board) for what she alleged was an illegal assessment of her properties. The plaintiff stipulated that the board granted her some reduction in assessments, but she was afforded no relief on the alleged illegal tax assessment process. The plaintiff filed tax appeals under G.L.1956 § 44–5–26 each year between 1991 and 1995, and the five separate appeals were consolidated in the Superior Court. In those appeals, plaintiff contended that "the Town's December 31, 1989 revaluation and the resul-

tant assessment against property in the Town exceeded its full and fair cash value in violation of G.L. § 44–5–11," and she sought a refund of all taxes collected. Further, she alleged that the tax assessor violated § 44–5–11(b) by not certifying the revaluation and also violated § 44–5–22 by certifying the tax roll late for the years 1989 through 1993.

In an agreed statement of facts, both parties stipulated the following relevant facts: In 1989, Middletown's tax assessor "conducted a townwide revaluation of all taxable real estate pursuant to R.I.G.L. § 44–5–11 which was implemented with the December 31, 1989 assessment." Although defendant was directed by § 44–5–11(b) to certify in writing to the State of Rhode Island that the revaluation was completed, he did not perform this act. He did, however, in correspondence with the State of Rhode Island Department of Administration, explain that his "office [did] not consider the process to be complete until all of the board of review hearings ha[d] been dealt with." In addition, for each December 31st tax assessment for the years 1989 through 1993, the tax assessor's certification of the tax roll occurred well after the June 15 date required by § 44–5–22.[1] Significantly, plaintiff stipulated that the valuations of *her property* were "the true and accurate valuations of said property for the respective tax years shown."

The trial justice found that by acknowledging that her property was accurately valuated at its *full and fair cash value,* plaintiff in essence not only approved the assigned values but also affirmed the process itself and, in so doing, failed to satisfy her burden of proving that her property was overassessed or that the tax assessor overassessed plaintiff's property illegally or that defendant otherwise acted illegally.

The trial justice also found that, although the language of the tax statute in the instant case directed that the tax assessor certify in writing to the Department of Administration the completion of the revaluation, the General Assembly had not provided a remedy in the event the certification was filed late or was not filed at all. In the absence of an explicit statutory remedy for a late certification, especially given that a remedy was provided under § 44–5–26 in the event that the tax was illegally assessed or collected, the trial justice concluded that the omission of a remedy was deliberate and that no private remedy was available to plaintiff. The trial justice also found that the remedy under § 44–5–26 could not be applied to render illegal a late filing of a tax assessment.

In considering the public policy effects of his ruling, the trial justice took judicial notice that it was not unusual for cities and towns to file late tax assessments, and consequently, that entitling individuals to a full refund for a community's tardy certification of tax assessments—the remedy plaintiff sought—would result in chaos. Therefore he entered judgment for defendant. The plaintiff appealed and has raised the following issues before this Court: (1) whether the revaluation was void because the tax assessor failed to comply with the certification requirements of § 44–5–11(b), (2) whether the tax levies were illegal because the tax assessor failed to certify the tax rolls by the date specified in § 44–5–22, and (3) whether the tax assessments were illegal because they were in excess of 100 percent of the ratable properties' full and fair cash value. Before addressing these issues, we first discuss whether plaintiff had standing to bring these matters before the Court, given her

---

1. The Middletown Town Council passed resolutions in the years 1990 through 1994, levying and ordering the collection of ad valorem taxes on ratable real estate in accordance with G.L.1956 § 44–5–1. The resolutions, however, were passed later than June 15 and provided due dates for the certifications later than June 15. In the years 1990 through 1992, defendant did not comply with those later due dates; in the years 1993 and 1994, his certifications complied with the later dates specified in the council resolutions.

stipulation that the valuation of her properties was accurate.

## Standard of Review

The issue of whether plaintiff had standing to bring her appeal is a mixed question of law and fact. "A trial justice's findings on mixed questions of law and fact are generally entitled to the same deference as the justice's findings of fact. *Hawkins v. Town of Foster*, 708 A.2d 178, 182 (R.I.1998). But, when those mixed questions of law and fact impact constitutional matters, we shall review the findings *de novo*, pursuant to *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). *See Foley v. Osborne Court Condominium*, 724 A.2d 436, 439 (R.I.1999) (applying the *Ornelas* standard to a civil case)." *Palazzolo v. State*, 746 A.2d 707, 711 (R.I.2000).

Our determination of whether the revaluations were void or illegal and whether a private remedy was provided by the General Assembly rests on a question of statutory construction. "[I]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Flores*, 714 A.2d 581, 583 (R.I.1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). "Moreover, when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich*, 643 A.2d 1194, 1197 (R.I. 1994)). If statutory provisions appear unclear or ambiguous, however, we shall examine the entire statute to ascertain the intent and purpose of the Legislature. *DiCicco*, 707 A.2d at 253 n. 1.

## Standing

Turning first to the issue of standing, this Court has held that a plaintiff has standing when " 'the plaintiff alleges that the challenged action has caused him [or her] injury in fact, economic or otherwise.' " *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 22, 317 A.2d 124, 128 (1974). In making this determination, " '[t]he line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury.' " *Matunuck Beach Hotel, Inc. v. Sheldon*, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979). We have also held that a taxpayer has standing if the individual has a "personal stake beyond that shared by all other members of the public at large or the taxpayers of the town." *West Warwick School Committee v. Souliere*, 626 A.2d 1280, 1284 (R.I.1993). Even if the requirement for standing has not been met, however, on rare occasions this Court has allowed the case to proceed when substantial public interest is at stake. *See, e.g., Burns v. Sundlun*, 617 A.2d 114, 116 (R.I.1992) (noting that when the plaintiff raised "a question of statutory interpretation of great importance to citizens in localities that could become home to gambling facilities seeking to simulcast and invite wagering on out-of-state events," the court conferred standing, although the plaintiff failed to prove an injury in fact resulting from the challenged statute).

The statutory scheme set forth in § 44–5–26 allows an individual plaintiff to protest his or her own assessment as plaintiff has done here, but the statute does not permit one taxpayer to bring, in essence, a class action challenge to the entire taxation structure of a municipality. Moreover, the statutory remedy for relief from an alleged illegal assessment of taxes requires that a plaintiff constitute an "aggrieved person." Here, plaintiff stipulated that overvaluation of her specific property was not at issue. It follows that once plaintiff stipulated that the revaluation of her property was accurate, the only adverse effect she allegedly suffered was the tax assessor's habitual tardiness in certifying the tax roll and the revaluation. The tardiness arguably produced a generalized

grievance, common to all taxpayers in the town, a grievance that did not endow plaintiff with standing to contest the general outcome of the revaluations, absent any claim that the revaluation of her property was inaccurate. *West Warwick School Committee,* 626 A.2d at 1284.

### Remedy Under Section 44–5–26

■ With respect to plaintiff's claim that her properties were illegally assessed, the trial justice found that no remedy was available for a town's late or failed certification under § 44–5–26, the statutory remedy for relief from assessment. We have addressed this issue in *S.S. Kresge Co. v. Bouchard,* 111 R.I. 685, 306 A.2d 179 (1973), which held that § 44–5–26 is the exclusive remedy available for relief from an alleged illegal assessment of taxes. In that case, we concluded that if the Legislature intended a remedy beyond the two-step appeal process provided in the statute, it would have so provided. More recently, in *Bandoni v. State,* 715 A.2d 580 (R.I.1998), we concluded that in the absence of an explicit statutory provision of a remedy in the Victim's Bill of Rights, G.L. 1956 chapter 28 of title 12, or in the victims' rights amendment to the Rhode Island Constitution, article 1, section 23, the Bandonis—the plaintiffs—had no private cause of action for monetary damages after the State failed to keep them apprised of the progress of the case against the driver of a car that had seriously injured them in an accident, as was required by the statute. We stated in *Bandoni* that the function of prescribing remedies for rights is a legislative responsibility not a judicial task, and we held that, in view of the General Assembly's failure to enact an enforcement provision, no private cause of action for damages was intended. *Id.* at 594. It is our conclusion here that the Legislature did not provide a remedy to taxpayers in plaintiff's position, and, therefore, we reject plaintiff's attempt to recover on this basis.

### Certification

■ In her appeal, plaintiff alleged that the tax assessor never certified to the Department of Administration that the 1989 townwide revaluation was complete, as required by § 44–5–11. Consequently, plaintiff argued, the revaluation was void. She also argued that the town's tax roll had not been properly certified, and thereby violated § 44–5–22 and rendered the tax levies illegal.

Section 44–5–11(b) provides that: "The assessors of the cities and towns shall certify, in writing, to the department of administration * * * when the revaluation is completed." In addition, § 44–5–22 states that "[t]he tax levy shall be applied to the assessment roll and the resulting tax roll certified by the assessors to the town clerk, town treasurer, or tax collector, as the case may be, not later than the next succeeding June 15." As of the date of the parties' agreed statement of facts, defendant had not certified the 1989 revaluation.[2] By his own admission, the tax assessor also did not complete the assessments for the years 1990 to 1994 until well after June 15 or after the dates specified in the annual Middletown Town Council resolutions that required defendant to deliver certified and signed assessments to the Town Clerk. The trial justice concluded that plaintiff suffered no deprivation of substantive rights as a result of the violations of the applicable statutes and that, regardless of the "mandatory" language of the statutes, the General Assembly had not provided a remedy in the event of late filings.

In *Rives v. Taylor,* 43 R.I. 426, 113 A. 113 (1921), this Court addressed facts and issues similar to those presented by plaintiff. In *Rives,* where "[t]he assessment of the tax was in every way regular except as to the time of completing the assessment and filing the assessment roll," we posed the following question: "Wherein did the

---

**2.** The tax assessor had not certified the reval-    uation as of the date of oral argument.

delay in filing the tax roll infringe upon the rights of the plaintiffs?" *Id.* at 429, 113 A. at 114. We held in *Rives* that " 'a delay in returning the roll is important only when it deprives the individual taxpayer of his opportunity to examine into his own assessment and to take proper steps to have it reduced or corrected, or unreasonably shortens the time allowed him for this purpose.' " *Id.* at 430, 113 A. at 114. *See also Pendleton v. Briggs,* 37 R.I. 352, 359–60, 92 A. 1024, 1027 (1915) (holding that as long as the defendant was not deprived of some substantial right, mere irregularities could not defeat an action for the recovery of a town tax). In the present case, plaintiff's own assessment was lowered by the board, after which she stipulated that her property was accurately valuated. Then she appealed in the Superior Court the allegedly illegal process that arrived at the assessment. Reaffirming our reasoning in *Rives* and *Pendleton,* we are of the opinion that plaintiff here suffered no deprivation of a substantive right merely as a result of tardy certifications by the tax assessor.

Additionally, plaintiff argued in her appeal that taxing statutes must be strictly construed, with all doubts resolved in favor of the taxpayer, and that failure by the tax assessor to adhere strictly to the legislative mandates of § 44–5–11(b) and § 44–5–22 rendered the revaluation void and the tax levies illegal. We have discussed mandatory and directory language in the context of a statutory time restriction in *Cabana v. Littler,* 612 A.2d 678 (R.I.1992). There we held that a supplemental tax was illegal because the tax-due date directly contravened the city ordinance that raised the tax. Providence City Ordinance § 21–1, codifying P.L.1969, ch.120. *Cabana,* 612 A.2d at 683. Even if we were to interpret the language in § 44–5–11(b) and § 44–5–22 as mandatory, *Cabana* is readily distinguishable from the present case, because there a *supplemental* tax was implemented after the deadline for tax levies for the fiscal year, thereby imposing two conditions that prejudiced the taxpayer. In the present case, plaintiff suffered no depriva-

tion of substantive rights as a result of the late or failed filing of the tax documents; she was merely required to pay her ad valorem taxes, based on an admitted accurate assessment of her ratable property. Moreover, § 44–5–11(b) and § 44–5–22 concern only the procedural aspects of the assessment and certification process, whereas the statute in *Cabana* limited the city's power to levy the tax to a specific time frame. *Cabana,* 612 A.2d at 683.

■ After reviewing the relevant provisions of the general laws, it is our conclusion that the certifications at issue here are directory, not mandatory. Consequently, the tax assessor's failure to perform a directory instruction does not render the entire tax structure illegal or illegitimate, nor does it trigger the invalidity of the tax. We believe, however, that tax assessors can and should certify a revaluation even when appeals may be pending, a circumstance that the assessor could note in the certification.

### Full and Fair Cash Value

■ Finally, plaintiff alleged that "The Tax Assessor systematically assessed valuations in excess of 100% of full and fair cash value in clear violation of the *assessment process.*" Section 44–5–12(a) provides that "[a]ll property subject to taxation shall be assessed at its full and fair cash value, or at a uniform percentage of its value, not to exceed one hundred percent (100%)." This Court has previously defined " 'full and fair cash value' " as "that price the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer." *Rosen v. Restrepo,* 119 R.I. 398, 400, 380 A.2d 960, 961 (1977); *Allen v. Bonded Municipal Corp.,* 62 R.I. 101, 105, 4 A.2d 249, 251 (1938). In determining the fair market value of ratable property, an assessor is not bound by any particular formula, "but rather he or she is exercising a discretionary act which has been authorized by our state's constitution and delegated in

turn by the General Assembly to the various municipal assessors." *Rosen,* 119 R.I. at 401, 380 A.2d at 961; *Kargman v. Jacobs,* 113 R.I. 696, 704, 325 A.2d 543, 547–48 (1974).

A taxpayer who challenges the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property has the burden of presenting evidence of fair market value. *Nos Limited Partnership v. Booth,* 654 A.2d 308, 310 (R.I.1995). In the present case, once plaintiff conceded the fair and accurate revaluation of her property, the "full and fair cash value" was established, and the alternative assessment at a "uniform percentage" became inapplicable. Consequently, the plaintiff failed to satisfy her burden of proving that her property was overassessed or that the tax assessor acted illegally.

In her appeal, plaintiff also argued that "the term 'assessment' refers to the 'entire plan or statutory scheme' or process for the imposition and collection of taxes," not the value placed on property on a particular date by an official for the purpose of taxation, and she relied on *deZahara v. Weiss,* 516 A.2d 879, 880 (R.I.1986) for support. The plaintiff in *deZahara,* however, was an "aggrieved person" who suffered specific, concrete injury from the assessment process when her appeal to reduce the assessment on a property was denied because she had purchased the property after the date of revaluation. In contrast, plaintiff here, who stipulated that her properties were accurately valuated, suffered no such injury, and therefore we need not address the details of the assessment process.

### Conclusion

In summary, we conclude that the provisions in § 44–5–11(b) and § 44–5–22, which set forth the procedures for certifications of revaluations and tax rolls by tax assessors, are directory, not mandatory. Revaluations are not void and tax levies are not illegal merely because they result from a delayed process. Moreover, § 44–5–26 provides no remedy to a taxpayer complaining of the results of an alleged illegal assessment beyond the statute's opportunity for review of the taxpayer's own assessment. Therefore, we deny and dismiss the plaintiff's appeal and affirm the judgment of the Superior Court, to which the papers in the case may be returned.

Justice FLANDERS was not present at oral argument but participated on the basis of the briefs.

FLANDERS, Justice, concurring.

I concur in the result reached, but I do so solely on the basis of the reasons given by the Court in those sections of its opinion entitled "Certification" and "Full and Fair Cash Value." Assuming, without deciding, that the plaintiff has standing to bring her claim, I believe that G.L.1956 § 44–5–26 is the appropriate remedial mechanism to challenge alleged illegal tax assessments like the ones challenged in this case. Pursuant to § 44–5–26 (authorizing the Superior Court to grant "relief from the assessment" to any person "aggrieved on any ground whatsoever by any assessment of taxes against him or her in any city or town"), a reviewing court has the power, in a proper case, to declare an assessment illegal and award appropriate declaratory, equitable, and legal relief as the circumstances may require. Here, however, for the reasons given by the Court, I do not believe that the challenged revaluation and tax assessment certifications were illegal, notwithstanding the town's failure to certify the revaluation and its delay in certifying the various tax assessments at issue. Thus, I concur in the Court's decision to affirm the trial court's judgment and deny this appeal.