Hillsborough,
No. 4804.

NASHUA BOARD OF EDUCATION

*v.*

MARIO J. VAGGE, *Mayor and the Board of Aldermen.*

Argued February 2, 1960.

Decided March 31, 1960.

458

*John D. Wilcox* and *Earley & Flynn* (*Flynn* orally), for the plaintiff.

*Leo R. Lesieur,* city solicitor and *Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Phinney* orally), for the defendants.

KENISON, C. J. The plaintiff states the issue in this case in the following language: "The question before this Court is whether the Board of Education of the City of Nashua has the sole and exclusive power to select a site for the erection of a junior high school, and also whether, having selected unused land owned by the City of Nashua for the erection of a junior high school, the Board of Education can compel the Board of Aldermen to convey and transfer the selected site to the Board of Education." It is the defendant's position that the question requires a negative answer, while the plaintiff maintains that the question should be answered in the affirmative. Pertinent to the determination of the issue is RSA 199:2 which reads as follows: "LOCATION IN CITIES. The school board of cities shall have sole power to select and purchase land for schoolhouse lots. When said board has secured, by vote of the city councils, an adequate appropriation for the purchase of a specified lot at a specific price, said board may make the purchase."

The first sentence of RSA 199:2 speaks in terms and tones loud and clear. It provides that the school board shall have "sole power" to select and purchase land for schoolhouse lots. Taken by itself it places an exclusive responsibility in the school board which is not to be shared or diluted by the mayor and board of aldermen. However the second sentence of RSA 199:2 qualifies the broad and exclusive power granted the school board or board of education in the first sentence of the section. That the second sentence is a "restriction upon the power of the board of education" was suggested by way of dictum in *Wilcox* v. *Burnham*, 98 N. H. 64, 67. The provision that the board of education "may make the purchase" is qualified by the requirement that it secure "by vote of the city councils, an adequate appropriation for the purchase . . . . " Thus the second sentence of the statute subjects the selection and purchase of land for schoolhouse lots by the board of education to the powers of appropriation granted the mayor and board of aldermen.

We are aware of the policy favoring financial independence for school districts recommended in Report of the [Legislative] Commission to Study the State Education System (1946). "School districts that are fiscally dependent on finance committees, city councils and other agencies of the local government lose at once their major administrative responsibility." *Id.*, 167. We followed this recommended policy in *Wilcox* v. *Burnham*, 98 N. H. 64,

because the statutes and city charter indicated a legislative purpose to give the board of education of Nashua the right to fix the compensation of teachers which was not limited by the general grant of power of appropriation to the mayor and board of aldermen. See also, *Baker* v. *Nashua*, 77 N. H. 347, relating to the compensation of police officers in the same city.

However the extent to which school administration is subject to control by the mayor and board of aldermen is determined by the general statutes and the charter provisions in each city. *Toussaint* v. *Fogarty*, 80 N. H. 286. That it varies from city to city and is dependent on the subject matter involved is illustrated by *Franklin* v. *Hinds*, 101 N. H. 344, where the city council of Franklin was sustained in its refusal to appropriate funds for additional teachers. See Garber, Yearbook of School Law, 1960, *p*. 90.

"In any particular instance the degree of control to be exercised by either schoolboard members or municipal officers must be ascertained by reference to statutory and charter provisions. Under no circumstances, however, will municipal officers be permitted to exercise any greater degree of control over school finance than that clearly intended by the legislature." Edwards, The Courts and Public Schools (Rev. *ed*. 1955), *p*. 106 quoted with approval in *Franklin* v. *Hinds*, 101 N. H. 344, 345. Applying this principle of statutory construction to this case we nevertheless find no provisions in the city charter as amended or in RSA 199:2 which compel the city to transfer the land selected by the board of education regardless of the action taken by the mayor and the board of aldermen. Laws 1913, *c*. 427, as amended; RSA 47:5; *Wilcox* v. *Burnham, supra*.

*Petition dismissed.*

All concurred.