Hillsborough,
No. 6458.

ROLAND G. LEBEL & *a. v.* ARMAND A. BEAULIEU & *a.*

June 30, 1972.

*Stein, Gormley & Morrill* (*Mr. Arthur O. Gormley, Jr.,* orally) for the plaintiffs.

*James A. Connor,* county attorney, for the defendants, filed no brief.

*Hamblett, Kerrigan, LaTourette & Lopez* (*Mr. Joseph M. Kerrigan* orally) for the Nashua Board of Education, intervenor.

*Devine, Millimet, Stahl & Branch* for Dana Patterson, Inc., and Nuland Corporation, intervenors, filed no brief.

KENISON, C.J.   The question presented is whether certain voters of the city of Nashua may appeal the Nashua Board of Education's selection of certain land for schoolhouse purposes to the Hillsborough County Commissioners for the commissioners to select a location after a hearing.

The plaintiffs and more than ten percent of other voters

of the city of Nashua were aggrieved by the Nashua Board of Education's selection of certain land in Nashua for the future construction of a public high school. The plaintiffs petitioned the Hillsborough County Commissioners to hear their grievance on the proposed schoolhouse location and to designate the location, but the commissioners refused to do so. The plaintiffs then filed a petition for declaratory judgment in the Hillsborough County Superior Court requesting the court to declare that the county commissioners were required under RSA 199:9, 10, 12 to hold a hearing and determine the location of a schoolhouse in the city of Nashua. The Nashua Board of Education and the owners of the land in issue, Dana Patterson, Inc., and Nuland Corporation, were granted leave to intervene. The Trial Court (*Batchelder,* J.) dismissed the petition for declaratory judgment and the plaintiffs excepted.

The parties had submitted to the superior court an agreed statement of facts in which they stipulated that on December 13, 1971, the Nashua Board of Education had selected ninety acres of land as the location of a proposed new high school for the city of Nashua; on December 14, 1971, the Nashua Board of Aldermen had appropriated the funds for the purchase of the land; and that on December 28, 1971, the board of aldermen overrode the mayor's December 20, 1971 veto of the appropriation and again appropriated the funds necessary for the purchase of the land.

RSA 199:9 states: "Relocation by County Commissioners. If ten percent or more of the voters of a school district are aggrieved by the location of a schoolhouse by the district or its committee, or by the school board, they may, within ten days after the making of the location, apply by petition to the county commissioners, who shall hear the parties interested and determine the location." The statute was originally enacted in substantially its present form by Laws 1871, 4:1 at the request of certain persons, voters of a school district in the city of Concord, who did not approve of a site selected by the district's superintending committee under the authority of what is now RSA 199:1 (supp.) and who sought an opportunity to override that selection by statutorily designating the county commissioners as an appellate board in such

matters. *Farnum's Petition,* 51 N.H. 376 (1871); *see Ayers* v. *School District,* 67 N.H. 169, 29 A. 416 (1891). The pertinent statutory provisions governing location of schoolhouses at that time provided in part that the school district would decide a schoolhouse location by vote or by a committee appointed for the purpose. G.S. 80:2. This statute was the predecessor to RSA 199:1.

RSA 199:1(supp.), 9 apply to school districts in towns and cities in the absence of charter or statutory provisions providing differently. *Farnum's Petition, supra* at 379; *Adams* v. *Slate,* 65 N.H. 188, 189, 18 A. 321 (1889); Garber, The Yearbook Of School Law 1971, at 123-34. In 1897, what are now RSA 199:2-5 were enacted in substantially their present form (Laws 1897, 65:1-4) in acknowledgment of the fact that eleven municipalities had been incorporated as cities by that time (1971 N.H. Manual for the General Court 138-40; Laws 1897, ch. 121) and that in nine of the eleven cities the school districts had lost their independent corporate existence and had become a dependent part of their municipalities. *See* Public Education in New Hampshire: The Report of the Commission to Study the State Education System 162-63 (1946); Report of the Interim Commission on Education 49, 53 (1961). With the school districts' loss of independent corporate existence in most of the cities, the then provisions of what is now RSA 199:1(supp.) relating to site selection by "vote of the school district" or by a committee appointed for that purpose and the then provisions of what is now RSA 199:9 relating to voter grievances about a selection so made were not relevant.

The city of Nashua itself became one school district by Laws 1868, chapter 6. Its charter provides that "[t]he City of Nashua shall continue to constitute one school district, and the school committee of said City shall be styled the Board of Education. It shall perform all such duties as the School Committee in towns is required by law to perform . . . ." Laws 1913, ch. 427, pt. 1, *s.* 74; Laws 1923, 227:2; *Wilcox* v. *Burnham,* 98 N.H. 64, 94 A.2d 378 (1953). There were no school district meetings as such in Nashua thereafter; Nashua Board of Education members were elected at the general municipal election. Laws 1868, 6:2; Laws 1913, ch.

427, pt. 1, *s.* 75. The city's charter also grants the administration of the fiscal, prudential, municipal and other affairs of the city of the mayor and board of aldermen (Laws 1913, ch. 427, pt. 1, *s.* 4) with the exception, in the case of the school system, of the power to determine the salaries and wages of school employees (*id. s.* 42; *Wilcox* v. *Burnham supra.*).

RSA 199:2-4 were intended to authorize a school board that was not independent of a city but a part of it to select and purchase a site for a schoolhouse in a manner different from that authorized by RSA 199:1 (supp.) (*Nashua Board of Education* v. *Vagge,* 102 N.H. 457, 159 A.2d 158 (1960)), RSA 197:1, RSA 198:4, 4-a, 5 and to do so without the selection being appealable to county commissioners under RSA 199:9. 1897 N.H.H.R. Jour. 546; Edwards, The Courts and the Public Schools 316-21 (3d ed. 1971). The city of Nashua is such a city. The city of Concord is not. *See* Laws 1961, ch. 355; Laws 1967, ch. 560; Laws 1971, ch. 262. And that is a reason RSA 199:5 expressly excepted the Union School Districts of Concord and Keene when the provisions of RSA 199:2-4 were orginally enacted in 1897. The two school districts had then, and have now, a corporate existence independent of the cities of Concord and Keene.

RSA 199:2 states that, with the exception of the school districts of Concord and Keene expressly mentioned in RSA 199:5, the school boards of cities "shall have sole power to select" land for schoolhouses. This authority to select such land is direct and unequivocal, and it differs from that in RSA 199:1(supp.), which states that a school district "may decide" the schoolhouse location. RSA 199:2 subjects the city school board's power of schoolhouse site selection to the city council's appropriation of funds to enable the school board to purchase the site selected. *Nashua Board of Education* v. *Vagge,* 102 N.H. 457, 159 A.2d 158 (1960). But independent school districts may vote to appropriate money for school purposes at their annual meetings, and the net amount certified to the city taxing authorities must be raised by the city for school purposes (RSA 197:1; RSA 198:4, 4-a, 5; Report of the Interim Commission on Education 49, 53 (1961)); and RSA 33:3, 8, 9 empower independent school districts to authorize bond issues for capital projects. Thus,

RSA 199:2 must have been intended to apply, and continue to apply, to a city's dependent school district, granting such a school district the sole power to select a site and subjecting this power to the appropriation power of the city of which the district is a part. *See generally* Public Education in New Hampshire: The Report of the Commission to Study the State Educational System 162-68 (1946).

For school districts having a corporate existence independent of their municipalities, the statutory language (RSA 199:1(supp.)) referring to a "vote" of the school district for the location of its schoolhouse, the appointment of a committee for making the selection, or the eventual determination of the site by the district's school board on appeal thereto (RSA 199:7, 8) would be meaningful and relevant. This would also be true of the statutory language in RSA 199:9 referring to "voters" aggrieved by a schoolhouse selection by the "district", its committee or its school board. But for those school districts that are dependent upon cities, that statutory language would be meaningless and irrelevant. In the dependent school districts, schoolhouse sites are not determined by vote of the school districts, or by appointment of an ad hoc site selection committee, or by the school board as a local appellate board. When, as in the case of the city of Nashua, the city is the school district and the school board is a unit of the city serving as the city's school committee, the statutory right to appeal to the school board from a site location decision by the "voters" of the school district or by an ad hoc site selection committee is unreal.

There is a proviso in RSA 199:1, inserted by Laws 1945, 127:1, that the selection of a site for "any new school buildings" for "any school district" within the State would have to be approved by the "school board of the district within which it is proposed to construct such a building". The proviso could not have been intended to apply to school building construction in cities with dependent school districts, because such school board approval was already required by RSA 199:3.

The Hillsborough County Commissioners were not required to hear the appeal, and the petition for declaratory

judgment was properly dismissed.

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.