J-A06013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON, II | : | |
| | : | |
| Appellant | : | No. 676 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000432-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON, II | : | |
| | : | |
| Appellant | : | No. 677 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000441-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON, II | : | |
| | : | |
| Appellant | : | No. 678 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000440-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

| | : | |
|---|---|---|
| v. | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON, II | : | |
| | : | |
| Appellant | : | No. 679 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000096-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON | : | |
| | : | |
| Appellant | : | No. 680 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000006-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM M. SOLOMON | : | |
| | : | |
| Appellant | : | No. 681 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000005-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |

J-A06013-23

WILLIAM MANSOUR SOLOMON II       :
                                 :
                    Appellant    :     No. 682 WDA 2022

Appeal from the Judgment of Sentence Entered December 29, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-MD-0000472-2020

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: JUNE 21, 2023**

Appellant, William Mansour Solomon II, appeals from the judgment of

sentence entered on December 29, 2021. We affirm.

The trial court ably explained the facts and procedural posture of this

appeal:

> On July 13, 2020, Appellant's wife, Heather Solomon, filed for
> a temporary protection of abuse (PFA) order against
> [Appellant]. [The trial court] granted the temporary order
> and both parties appeared at the final PFA hearing held July
> 27, 2020. . . . [That day, the trial court] granted a final PFA
> for the duration of two years – until July 27, 2022.
>
> Appellant subsequently was charged with [seven] violations
> of the July 27, 2020 final order, specifically that: (1) he made
> an Instagram post threatening Ms. Solomon on or about
> September 28, 2020; (2) he sent Ms. Solomon a threatening
> email on or about November 28, 2020; (3) he sent Ms.
> Solomon a threatening email on or about December 22,
> 2020; (4) he sent Ms. Solomon a threatening email on or
> about December 29, 2020; (5) he broke and tampered with
> the front window of Ms. Solomon's residence and tampered
> with and opened her postal mail on or about January 28,
> 2021; (6) he sent Ms. Solomon threatening messages via
> Facebook on or about April 20, 2021; [and,] (7) he sent Ms.
> Solomon a threatening message via Facebook on or about
> May 4, 2021.

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 3 -

. . .

> A bench trial was held [on] December 29, 2021 at which [time] Appellant was represented by counsel. He was found guilty of all [seven counts of indirect criminal contempt (ICC) and sentenced to an aggregate [term of 15 to 30 months in jail].

Trial Court Opinion, 8/2/22, at 2-3 (footnotes omitted).

Following the denial of Appellant's post-sentence motions, Appellant filed timely notices of appeal. At Docket Numbers 676 WDA 2022, 677 WDA 2022, 678 WDA 2022, 680 WDA 2022, 681 WDA 2022, and 682 WDA 2022, Appellant raises the following claims:

> [1.] Whether the trial court erred in admitting emails and Instagram posts that were not properly authenticated to prove that they came from Appellant?
>
> [2.] Whether the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that Appellant violated a final PFA order?
>
> [3.] Whether Appellant's conviction was against the weight of the evidence?

*See*, *e.g.*, Appellant's Brief, 676 WDA 2022, at 10.

At Docket Number 679 WDA 2022, Appellant raises the following claims:

> [1.] Whether the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that Appellant violated a final PFA order?
>
> [2.] Whether Appellant's conviction was against the weight of the evidence?

Appellant's Brief, 679 WDA 2022, at 9.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Linda R. Cordaro. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Cordaro's August 2, 2022 opinion. Therefore, we affirm on the basis of Judge Cordaro's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Cordaro's August 2, 2022 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2023

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.

WILLIAM M. SOLOMON II,

Appellant.

:
: No. 432 of 2020 M.D.
: No. 472 of 2020 M.D.
: No. 5 of 2021 M.D.
: No. 6 of 2021 M.D.
: No. 96 of 2021 M.D.
: No. 440 of 2021 M.D.
: No. 441 of 2021 M.D.

# OPINION

Linda R. Cordaro, J.

## SUMMARY

Appellant was convicted after a bench trial on December 29, 2021 on seven (7) counts of indirect criminal contempt for violation of a final PFA order. He was sentenced immediately after trial to three (3) to six (6) months of incarceration on each charge; five (5) sentences were imposed as consecutive and two (2) were imposed as concurrent with the rest, for an aggregate sentence of fifteen (15) to thirty (30) months of incarceration. Appellant now appeals his convictions.

## PROCEDURAL BACKGROUND

On July 13, 2020, Appellant's wife, Heather Solomon, filed for a temporary protection of abuse (PFA) order against him. This court granted a temporary order and set a date and time for the final hearing. At that hearing on July 27, 2020, Ms. Solomon was represented by counsel and Appellant appeared *pro se*. At the conclusion of the hearing, this Court granted a final PFA order effective for two years – until July 27, 2022.

Appellant subsequently was charged with seven (7) counts of indirect criminal contempt for violating the order on seven (7) separate occasions between September 30, 2020 and May 4, 2021. A bench trial was held December 29, 2021 at which Appellant was represented by counsel. He was found guilty on all counts and sentenced to an aggregate fifteen (15) to thirty (30) months of incarceration immediately after trial.

On January 7, 2022, the Fayette County Clerk of Courts received a document from Appellant's trial counsel: "Motion for Post-Sentence Relief Pursuant to Pa.R.Crim.Proc. 720." However, there is no indication that the document was served on the Fayette County Court Administrator.[1] Consequently, the document was added to the case file, but it was never presented as a motion.

On June 6, 2022, Appellant filed a *pro se* Notice of Appeal on all seven (7) cases on the theory that because this Court had not issued a decision on the January 7, 2022 post-sentence motion within one hundred and twenty (120) days of filing, the motion was denied by operation of law as of May 7, 2022. Accordingly, Appellant filed his Notice of Appeal within thirty (30) days of that date. This Court issued a 1925(b) Concise Statement order and Appellant's new counsel responded with a timely Statement filed at each of the seven above-captioned matters. On July 25, 2022, the Superior Court *sua sponte* consolidated the appeals.

## FACTUAL BACKGROUND

On July 13, 2020, Appellant's wife, Heather Solomon, filed for a temporary protection of abuse (PFA) order against her husband. This Court granted the temporary order and both parties appeared at the final PFA hearing held July 27, 2020. Ms.

---

[1] The document certifies service by hand delivery to the undersigned and the district attorney. However, there is no record in judicial chambers of delivery.

Solomon was represented by counsel, Appellant appeared *pro se*, and both parties gave testimony. This Court found Ms. Solomon's testimony to be credible and granted a final PFA for the duration of two years – until July 27, 2022.[2]

Appellant subsequently was charged with seven (7) violations of the July 27, 2020 final order, specifically that: (1) he made an Instagram post threatening Ms. Solomon on or about September 28, 2020[3]; (2) he sent Ms. Solomon a threatening email on or about November 28, 2020[4]; (3) he sent Ms. Solomon a threatening email on or about December 22, 2020[5]; (4) he sent Ms. Solomon a threatening email on or about December 29, 2020[6]; (5) he broke and tampered with the front window of Ms. Solomon's residence and tampered with and opened her postal mail on or about January 28, 2021;[7] (6) he sent Ms. Solomon threatening messages via Facebook on or about April 20, 2021;[8] (7) he sent Ms. Solomon a threatening message via Facebook on or about May 4, 2021.[9]

## ISSUES ON APPEAL

Appellant raises three issues in his Concise Statement: (1) the evidence presented was insufficient to prove the Appellant violated the PFA order; (2) Appellant's convictions were against the weight of evidence; (3) the trial court admitted evidence that was not properly authenticated.

---

[2] This Court's findings included that the Appellant threatened Ms. Solomon on July 12, 2020, he pointed a gun at her, struggled with her, and attempted to prevent her from leaving the house.
[3] 676 WDA 2022
[4] 682 WDA 2022
[5] 681 WDA 2022
[6] 680 WDA 2022
[7] 679 WDA 2022
[8] 678 WDA 2022
[9] 677 WDA 2022

There are two issues to address before a discussion of the merits of this appeal: (1) the Notice of Appeal arguably is untimely; (2) a request to prepare a transcript of the proceedings has not been received.

As to the first issue of timeliness, the Notice of Appeal was filed June 6, 2022, one hundred and fifty-nine (159) days after the December 29, 2021 imposition of sentence. The record shows that the Fayette County Clerk of Courts received and stamped a document with the title "Motion for Post-Sentence Relief" from Appellant's trial counsel on January 7, 2022, which is within the ten-day period for a timely post-sentence motion under Pa.R.Crim.P. 720(A)(1). However, there is no indication that the "motion" ever was served on the Fayette County Court Administrator as required by Pa.R.Crim.P. 576(b)(1) and local rule F.C.R.Crim.P. 575(j).[10] Consequently, the "motion" was never presented to this Court for consideration. In fact, the existence of a post-sentence filing only came to light when Appellant mentioned it in his *pro se* Notice of Appeal. This arguably means the appeal is untimely under Pa.R.Crim.P. 720(A)(3) since there was no post-sentence motion and the appeal was filed more than 30 days after imposition of sentence.

"When post-sentencing motions are not filed, the judgment of sentence constitutes a final and appealable order for purposes of appellate review and any appeal

---

[10] F.C.R.Crim.P. 575(j) reads as follows: "The moving party shall file the original motion, Certificate of Presentation, and any attachments in the appropriate filing office before presentment in Motions Court. An original proposed order (if any), a copy of the Certificate of Presentation, Certificate of Service, and motion, assembled in that order, shall be delivered to the court administrator and every other party of record. Pursuant to Pa.R.Crim.P. 576(B)(1), all motions and other documents for which filing is required shall be served on each party and the court administrator so as to be received at least two (2) business days before presentation in Motions Court, unless there are emergency circumstances specified in the motion requiring presentation within a shorter time."

therefrom must be filed within thirty (30) days of the imposition of sentence."

*Commonwealth v. Borrero*, 692 A.2d 158, 159 (Pa. Super. Ct. 1997). Conversely, "[i]f post-sentencing motions are timely filed . . . judgment of sentence does not become final for purposes of appeal until the trial court disposes of the motion, or the motion is denied by operation of law." *Id*. An appropriate order must be on record for the Superior Court to have jurisdiction. *Id*.

Here, the December 29, 2021 imposition of sentence is the final order on record. There is no order denying a post-sentence motion (by operation of law or otherwise) because, effectively, no post-sentence motion was ever made. A court cannot decide, or fail to decide, on a motion never presented to it. This Court still will provide its analysis of the merits, but because the December 29, 2021 order is the only final, appealable order on record, this appeal arguably is untimely.

As to the second issue of a lack of transcript, Appellant's *pro se* Notice of Appeal certified that "a complete transcript(s) of the non-jury and sentencing proceedings have been ordered in this matter." However, there is no record that any request was received from either Appellant or his counsel as under Pa.R.A.P. 1911(d) and Pa.R.J.A. 4007(A). The certification in the Notice of Appeal does not substantially comply with the form of a request as in Pa.R.A.P. 1911(c), and it states that transcripts "have been" ordered, so it cannot be deemed a transcript request itself. Under Pa.R.A.P. 1911(d) if an appellant fails to take the required action for preparation of the transcript, "the appellate court may take such action as it deems appropriate, which may include dismissal of the appeal."

However, because dismissal is not an automatic result, this Court will provide its analysis of the merits of the appeal.[11]

## DISCUSSION

Appellant's first issue is that the Commonwealth failed to produce sufficient evidence to prove Appellant violated the provisions of the July 27, 2020 PFA order. His second issue as to the weight of evidence states, generally, that the protected party, Ms. Solomon, "fabricated evidence, lied under oath, and manipulated the facts." Concise Statement at ¶ 8. His third issue claims that video and electronic mail evidence presented at trial was inadequately authenticated.[12]

Appellant's position as set forth in his third issue is that some evidence should not have been admitted because it lacked proper authentication. However, this third issue implicates the first two as well because the allegedly improperly admitted evidence is among the evidence this Court considered for its sufficiency and weight. Therefore, the issue of whether video and electronic mail evidence was adequately authenticated will be addressed first.

### Authentication of Evidence

Appellant argues that this Court erred when it admitted video[13] and email evidence that was not adequately authenticated. "All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. The admissibility of evidence is within the sound discretion of the trial court, which must consider the relevance and probative

---

[11] The testimony and facts as recounted in this Opinion are based on audio recording and notes of the trial and sentencing proceedings.

[12] At the December 29, 2021 trial, Appellant's trial counsel objected to the admission of all exhibits on the basis of lack of authentication.

[13] It is unclear what Appellant means by "video evidence" since the only exhibits admitted were copies of emails, photographs attached to the emails, and an Instagram post. No video or audio recordings were presented at trial.

value of such evidence against its prejudicial effect. *Commonwealth v. Gonzalez*, 109 A.3d 711, 726 (Pa. Super. Ct. 2015) (citation omitted). A trial court's rulings on admissibility will not be overturned absent a showing of abuse of discretion. *Id.*

As defined by the Pennsylvania Rules of Evidence: "digital evidence" includes "emails, text messages, social media postings, and images." Comment to Pa.R.E. 901(b). Digital evidence is subject to authentication before it is admissible, that is, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). In order to link digital evidence with a person or entity, the proponent must offer either direct evidence (e.g., testimony from an individual with personal knowledge) or circumstantial evidence. Such evidence may include "proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship." Pa.R.E. 901(b)(11)(B)(ii). However, although proof of "ownership, possession, control, or access" is probative when combined with other evidence of the author's identity, this alone is not sufficient for authentication. Comment to Pa.R.E. 901(b). Other evidence of identity includes identifying characteristics, content, or substance that, when taken together with all the circumstances, links an alleged author to the evidence. *Id.* The relative anonymity of emails or text messages does not mean they are inherently unreliable, not any more so than are written documents which can be forged or copied. *Commonwealth v. Koch*, 39 A.3d 996, 1003 (Pa. Super. Ct. 2011), *aff'd by an equally divided court*, 106 A.3d 705 (Pa. 2014). Finally, a proponent of digital evidence need only offer sufficient evidence to support the finding that a particular person was the author; it is not necessary to prove that no one else could possibly be the author. Comment to Pa.R.E. 901.

During the December 29, 2021 trial, the Commonwealth presented seven exhibits. Exhibits 1, 2, and 3 were presented at case CP-26-MD-0000005-2021 (681 WDA 2022). Exhibits 1 and 2 were copies of an email that Ms. Solomon testified she received from the same email address Appellant had used to communicate with her while they were still together. Exhibit 3 was a photograph that Ms. Solomon testified was attached to that email message and which she identified as a photograph of her leaving her house. Exhibits 4 and 5 were presented at case CP-26-MD-0000006-2021 (680 WDA 2022). Exhibit 4 was a copy of an email from the same email address that Ms. Solomon had testified belonged to the Appellant, and Exhibit 5 was a photograph that, again, she testified was attached to that message, this time showing her buckling the son she shared with Appellant into the car in her driveway. Exhibit 6 was presented at case CP-26-MD-0000432-2020 (676 WDA 2022). This exhibit was a copy of an Instagram post that Ms. Solomon testified was posted from an account with a username she knew to belong to the Appellant and which had a profile picture of Appellant. Exhibit 7 was presented at case CP-26-MD-0000472-2020 (682 WDA 2022). This exhibit was a copy of an email that Ms. Solomon testified she received from the same email address as the other emails at Exhibits 1-5. She also testified that the Appellant typically used his mobile phone, not a desktop computer (which remained in her house), to access social media. This testimony offered proof that Appellant had ownership of, possession of, control of, or access to the email and Instagram accounts. However, this was not the extent of the evidence the Commonwealth presented for authentication; more compelling was the content of the emails and Instagram post, each of which referred to events and circumstances involving Appellant and Ms. Solomon.

Exhibits 1 and 2 included statements such as "You think what I pointed at you was bad, wait until you see what I'm capable of now," "Your paper won't help you," and "You think the army taught me to be stupid?" Ms. Solomon testified that Appellant had been in the army and that the message was referring to an incident in July 2020, when the Appellant had pointed a gun at her and their son.

Exhibit 4 included the statement: "My girlfriend and I fully intend to take Sterling and raise him so he has a good chance at a future." The email specifically mentioned the couple's son, and the final PFA order had awarded temporary custody of the child to Ms. Solomon.

Exhibit 6 included a picture of Ms. Solomon with some text stating: "If anyone sees this cunt feel free to make every shot count." Again, Ms. Solomon testified that Appellant had pointed a gun at her.

Exhibit 7 included statements such as "Someone needs to ruin your life like you're ruining my son's life," "I'll show you what a PFA is really about," and "Go ahead and keep running your mouth I'll let Sterling watch." Here again is a direct mention of the couple's son as well as of the PFA order.

This Court considered Ms. Solomon's testimony and identifying characteristics such as names or photos associated with the communications but also considered the specific content of the digital evidence presented. Here, the combination of direct and circumstantial evidence was enough to authenticate the evidence as what the Commonwealth claimed it to be: contact made by Appellant with Ms. Solomon.

The discussion of the two remaining issues – sufficiency of the evidence and weight of the evidence –presumes the digital evidence was adequately authenticated and properly admitted.

## Sufficiency of Evidence

Appellant argues in his first issue that evidence presented at trial was insufficient to find that he was guilty of violating the PFA order. Evidence is insufficient as a matter of law when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature. *Commonwealth v. Widemer*, 744 A.2d 745, 751 (Pa. 2000) (citing *Commonwealth v. Santana*, 333 A.2d 876, 878 (Pa. 1975)). The Pennsylvania Supreme Court has held that "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* at 751. The fact-finder may resolve any doubts regarding a defendant's guilt "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Fortson*, 165 A.3d 10, 14 (Pa. Super. Ct. 2017).

The Commonwealth must prove four elements for a charge of indirect criminal contempt: (1) the PFA order was sufficiently definite, clear, and specific so as to leave no doubt as to what conduct was prohibited; (2) the accused had notice of the order; (3) the act constituting the violation must have been of the accused's own volition; and (4) the accused acted with wrongful intent. *Commonwealth v. Brumbaugh*, 932 A.2d 108, 110 (Pa. Super. Ct. 2007).

On the Commonwealth's motion, this Court took judicial notice of the final PFA order at the start of December 29, 2021 trial, including that the order was effective July 27, 2020 through July 27, 2022; that the Appellant personally had appeared, unrepresented, at the final hearing; that the order protected Ms. Solomon; and that the provisions were that Appellant was not to "abuse, harass, stalk, or threaten" Ms.

Solomon, he was evicted from her residence, he was prohibited from having any contact with Ms. Solomon, either directly or indirectly, and that temporary custody of the couple's child was with Ms. Solomon.

There is little doubt that these provisions were definite, clear, and specific, and, as Appellant was present at the final hearing, he had notice of the provisions and the duration of the order. Furthermore, the content of the messages Ms. Solomon received, as presented by the Commonwealth, included statements of such a personal, direct, and derogatory nature that they could not have been accidental or inadvertent. Finally, since the Appellant was present at the final hearing and knew its provisions, he did act with wrongful intent when he undertook prohibited actions.

The Commonwealth presented evidence of direct and intentional contact made via email and indirect contact made via Instagram post on four of the seven cases.[14] This intentional contact alone would be sufficient to violate the no contact provision of the PFA. However, the communications also included threats of harm, either direct or implied, which violated the provision that Appellant was not to threaten Ms. Solomon. The evidence presented on these four cases was sufficient to establish beyond a reasonable doubt that Appellant did willfully violate at least one provision of the PFA order, as it prohibited him from any contact with her and from threatening her.

Two of the cases tried on December 29, 2021 were transferred from Washington County, Pennsylvania.[15] Ms. Solomon testified that she moved to that county on March 1, 2021, and that she afterward received private Facebook messages from an account that Appellant had used while they were still together. The account had the same profile

_____

[14] CP-26-MD-0000005-2021 (681 WDA 2022), CP-26-MD-0000006-2021 (680 WDA 2022); CP-26-MD-0000432-2020 (676 WDA 2022); and CP-26-MD-0000472-2020 (682 WDA 2022)
[15] CP-26-MD-440-2021 (678 WDA 2022), CP-26-MD-441-2021 (677 WDA 2022)

photo of Appellant as was on the Instagram profile she knew to belong to him. She accessed the messages on her mobile phone during her testimony and read them aloud.[16] She also testified that the messages were in a single thread, not individual messages, and that they were dated April 20, 2021 and May 4, 2021. The messages included statements such as "You ruined my life so I fully intend to end yours," "When I get Sterling for good, you'll see who gets the last laugh," "If there's one thing the Army taught me, it is to make every shot count," "FYI it's a free country and I can come wherever I want. You and your cops can't help you."

Ms. Solomon's credible testimonial evidence as to the source and content of the messages was sufficient to establish beyond a reasonable doubt that Appellant did willfully violate at least one provision of the PFA order as it prohibited him from any contact with her and from threatening her.

The only case that did not involve email or social media evidence was an incident that occurred January 28, 2021.[17] Ms. Solomon testified that she was returning home in her vehicle between 10:00 a.m. and 10:30 a.m. when she saw Appellant in his car, driving toward her on the street where her house was located. She attempted to follow him while she called police, but she was unable to keep him in sight for very long as he was traveling at a high rate of speed. Upon returning to her street, she waited for a police officer to arrive before approaching her house. When she did so, she saw that her mail, which typically was delivered between 9:30 a.m. and 10:00 a.m., had been taken out of her mailbox and one piece of mail was torn open: an envelope containing FBI background clearances that she needed for employment. In addition, her front window

---

[16] Hard copies of the messages were not transferred over with the case files from Washington County.
[17] CP-26-MD-96-2021 (679 WDA 2022)

was cracked, and the locks were broken off.[18] Ms. Solomon testified that, based on Appellant's address as it was listed on custody papers, he did not live on that street, nor, to her knowledge, did any of his friends or family live on the street. This court found Ms. Solomon's testimony to be credible and the circumstantial evidence sufficient to find Appellant guilty beyond a reasonable doubt of violating at least one provision of the PFA order as it prohibited him from being at Ms. Solomon's house and from stalking, harassing, or threatening her.

The evidence presented at all seven cases was sufficient for conviction. The provisions of the PFA were unmistakably clear, particularly the provision ordering that Appellant not have any contact with Ms. Solomon. Appellant was present at the final hearing, and therefore he had notice of the PFA and its provisions. As there was adequate authentication that the emails and messages that Ms. Solomon received had been sent by Appellant and they contained specific statements directed toward her, there is no doubt they were sent of Appellant's own volition. Finally, knowing the provisions of the PFA as he did, Appellant clearly acted with wrongful intent when undertook prohibited actions. The evidence presented neither contradicted physical facts nor contravened human experience and the laws of nature, and it sufficiently supported conviction on all charges.

### Weight of the Evidence

Appellant argues in his second issue that this Court's verdict was against the weight of the evidence. An appeal on the weight of evidence can succeed only by showing that the trial court "acted capriciously or palpably abused its discretion." *Choma v. Iyer*, 871 A.2d 238, 243 (Pa. Super. Ct. 2005) (citation omitted). The remedy of a verdict

---

[18] Ms. Solomon clarified that all the windows in her house had been installed incorrectly so that the locking mechanisms were outside instead of inside.

against the weight of evidence is a new trial "so that right may be given another opportunity to prevail." *Thompson v. City of Philadelphia*, 493 A.2d 669, 672 (Pa. 1985). In a jury trial, "[t]he decision of whether to grant a new trial based upon a claim that the verdict is against the weight of the evidence rests with the trial court." *Choma*, 871 A.2d at 243. "A challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (internal citation omitted). In a jury trial, if a jury reaches a verdict that "shocks one's sense of justice," a trial judge has some authority to grant relief. *Id.*

However, because an accused does not have the right to a jury trial on a charge of indirect criminal contempt, in such proceedings, the judge is the finder of fact, the one that "exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." 23 Pa.C.S.A. § 6114(b)(3); *Sanchez*, 36 A.3d at 39. The credibility of a witness includes questions of inconsistent testimony and improper motives. *Id.*

Here, Appellant argues specifically that "[t]he alleged victim of the Protection from Abuse Order fabricated evidence, lied under oath, and manipulated the facts in order to violate Appellant," and that this Court's verdict was so contrary to the evidence as to shock one's sense of justice. Appellant's Concise Statement at ¶ 8-9.

These claims challenge this Court's assessment of the credibility of Ms. Solomon's testimony as well as the weight of the evidence presented. This Court considered both the digital evidence and Ms. Solomon's testimony and gave appropriate weight to each. Despite Appellant's claim that Ms. Solomon lied under oath, her testimony simply was not so inconsistent or obviously deceptive as would support such a claim. As discussed,

the emails and social media messages admitted into evidence were adequately authenticated, and there is nothing in the record to show any of the evidence was fabricated or that false testimony was given. The Commonwealth was the only party to offer evidence; the defense did not call witnesses or present any contradictory evidence for consideration. The guilty verdicts here were not against the weight of evidence, and they were not capricious or unfounded, nor do they shock one's sense of justice.

## CONCLUSION

The verdicts rendered in the above-captioned matters were based on sufficient evidence to show Appellant intentionally violated at least one provision of the PFA order. They also were based on a careful consideration of the weight of the evidence to prove the violations and on digital evidence that had been adequately authenticated. This Court respectfully requests that the judgments be AFFIRMED.

BY THE COURT:

ATTEST:

_Timothy C. Dye_
Clerk of Courts

_Linda R. Cordaro_
Linda R. Cordaro, Judge

August 1, 2022

FILED
2022 AUG -2 PH 3:12
TIMOTHY DYE
FAYETTE COUNTY
CLERK OF COURTS